827 So.2d 42 (2002)
Thomas Harold NELSON, Appellant,
v.
Kathleen Nelson HALLEY, Appellee.
No. 2001-CA-00712-COA.
Court of Appeals of Mississippi.
September 24, 2002.
*43 Allen Flowers, attorney for appellant.
Michael Adelman, Hattiesburg, attorney for appellee.
EN BANC.
SOUTHWICK, P.J., for the court.
¶ 1. This appeal arises from a modification of a California child support order by the Forrest County Chancery Court. The parent paying support appeals. He argues that the court lacked jurisdiction to rule on the modification. We find that both parties in writing consented to the jurisdiction of the chancellor concerning modification of child support. There are procedural requirements yet to be fulfilled to make that consent effective to gain Mississippi the prerogatives of a uniform law on child support that most states have adopted. We find sufficient consent for jurisdiction but remand so that the remaining requirements of filing in other states can be fulfilled. *44 However, the chancellor did not have authority to lengthen the period provided in the California order for paying support. Thus we reverse and enter judgment on that issue. We also remand for a recalculation of a support arrearage, if any, in light of our returning the period during which support is to be paid back to what the California decree had provided.

STATEMENT OF FACTS
¶ 2. On December 16, 1988, Tom Nelson and Kathleen Halley were granted California's version of an irreconcilable differences divorce, ending a ten year marriage. The couple had three children: Jennifer, born in 1981; Kristi, born in 1982; and Thomas, Jr., born in 1984. The divorce decree provided for joint legal custody, with Halley being granted physical custody. Nelson was awarded visitation rights and ordered to pay Halley $399 per month in child support, being $133 per month per child. The decree contained the following provision:
Child support shall continue as to each child until that child reaches age nineteen if a high school student residing with a parent, otherwise until age eighteen, or until said child marries, dies, is emancipated, or further order of Court.
¶ 3. A California court modified the support in 1991, raising Nelson's monthly per child support obligation to $142, or $426 total per month. The new order further provided for an annual increase in Nelson's support obligations based on income.
¶ 4. On September 10, 1999, Nelson, now residing in Maryland, filed for a modification of child custody in the Chancery Court of Forrest County, Mississippi. It was there that Halley resided with the children. Nelson sought physical custody of their son, Tommy, sought to end the support payments that he had been making for Tommy, and filed the petition in the residence of the child as permitted by the Uniform Child Custody Jurisdiction Act (UCCJA) that has been adopted in Mississippi. Miss.Code Ann. § 93-23-5 (Rev.1994) (jurisdiction proper where child resides).
¶ 5. Ten days later an agreed temporary order was entered that permitted custody of the parties' son to change from the mother to the father. The consents to the court's jurisdiction that are set out in this order that both parties and both attorneys signed are key to the subject matter jurisdictional issue. We will elaborate in our later discussion.
¶ 6. About a week after the temporary order, Halley counter-claimed for an increase in child support. She asserted that the California order terminated support at a lower age than is the rule in Mississippi judgments. She sought modification such that this state's obligation would be imposed on the supporting parent to continue the payments until each child reached 21 years of age.
¶ 7. The final decree of March 26, 2001 finalized the granting of custody for the son to Nelson. Halley's counterclaim for increasing the period of time for support was granted. Nelson was assessed for the now elongated support period until age twenty-one, and medical expenses. The chancellor required that Nelson pay the fees of Halley's attorneys. The appeal has been deflected here.

DISCUSSION

1. Jurisdiction for modification of support
¶ 8. Nelson first challenges the court's jurisdiction to modify his child support obligations. In Mississippi, petitions to modify foreign child support orders are governed by Mississippi's version of the Uniform Interstate Family Support Act *45 (UIFSA), codified as Miss.Code Ann. §§ 93-25-1 through XX-XX-XXX (Supp. 2001). It would appear that the first time in these proceedings that UIFSA was mentioned was on appeal. Any compliance with the requirements of the Act was serendipitous. As will be explained, the statute in most circumstances requires that proceedings for modification of a support obligation created by a court in another state be brought in that original state or in the state of residence of the parent who owes support. In the present case, that would mean modification should have been sought either in California where the divorce was granted, or in the father's present home state of Maryland. There is also a procedure by which the parties may indicate their mutual agreement to try the case in a different state. That was not followed by these parties. Whether consent was nonetheless effectively given is the central question we must resolve.
¶ 9. At the outset, we note some general rules and their altered application here. A party may challenge a court's subject matter jurisdiction at any point during the proceedings. Esco v. Scott, 735 So.2d 1002, 1006 (Miss.1999). The question here basically but not entirely is one of subject matter jurisdictiondid this Mississippi court have the right to try the issue of modification of the California decree's child support provisions? Unlike in personam jurisdiction, consent of the parties usually cannot invest a court with subject matter jurisdiction it otherwise lacks. If a court does not have the authority to address the subject of the suit, that defense need not be raised in the initial pleadings as is the case for other defenses. M.R.C.P. 12(h)(3) cmts. Contrary to those general rules, jurisdiction to hear a UIFSA case very much can be granted by consent of the parties.
¶ 10. The first step under the proceedings authorized by this state's version of UIFSA is to file the foreign judgment in an appropriate chancery court. Once the judgment is registered, the subject matter of this state's jurisdiction on that foreign judgment depends on the residences of the individuals affected. The subject matter is alterable by consent. Regardless of consent, the judgment can be enforced much more readily than it may be modified. Each step in the UIFSA process will be applied to what occurred in this case.

A. Registration
¶ 11. Mississippi's statute follows closely the proposal crafted and then sponsored by the National Commissioners on Uniform State Laws. A child support order from another state may be registered in Mississippi. Miss.Code Ann. § 93-25-81 (Supp.2001). Registration does not require the commencement of litigation. Instead, the foreign judgment is filed in an appropriate chancery court. The statute requires the filing of two copies of the judgment, one certified; a sworn statement indicating the amount of any unpaid support; the obligor's name, address, social security number, name and address of employer, description of nonexempt property; and obligee's name and address. Miss.Code Ann. § 93-25-83 (Supp.2001).
¶ 12. The foreign judgment and most of this information was filed not by the mother who was seeking a modification, but by the father when he began his suit seeking modification of custody. The most important information required for registration was filed in the correct chancery clerk's office when the custody modification suit began. Some details such as Social Security numbers and employment data were missing. That is a matter of form that can be corrected under the registration statute. Insofar as the purposes of enforcing *46 that California judgment, it had adequately been filed. It was of record in Mississippi in the proper clerk's office, regardless of who filed it. In fact, the father sought to modify support by eliminating it for the son whose custody he was seeking.
¶ 13. Moreover, we note that the next section of the Act provides that when the support order issued in another state "is filed in the registering tribunal of this state," i.e., the chancery court, then it "is registered...." Miss.Code Ann. § 93-25-85(1) (Supp.2001). If some of the other information is not filed, that does not prevent the support order from being considered registered and available for enforcement. We hold that the California order must be considered registered.

B. Subject matters for the chancery court unless consent is given
¶ 14. A support order issued by another state can be modified in Mississippi in certain circumstances. Because the premise of the Uniform Interstate Family Support Act is that child support issues are interstate in ramifications, the Act has established controls to prevent competing orders, indeed inconsistent orders, from being entered by different states which might acquire in personam jurisdiction over the parties. The concept that must be applied by all jurisdictions to which a child support modification issue is brought is that only one state at a time has what the Act calls "continuing exclusive jurisdiction." Miss.Code Ann. §§ 93-25-17 through 93-25-21 (Supp.2001). If the state court does not have it, the state court should not act.
¶ 15. Different situations can arise in which the issue of which state has exclusive jurisdiction becomes relevant. The following explains what the chancery court in this case had to consider:
(1) After a child support order issued in another state has been registered in this state, unless the provisions of Section 93-25-107 apply [which are that both parents reside in the state but the child does not], the responding tribunal of this state may modify that order only if Section 93-25-107 does not apply and, after notice and hearing, it finds that:
(a) The following requirements are met:
(i) The child, the individual obligee and the obligor do not reside in the issuing state;
(ii) A petitioner who is a nonresident of this state seeks modification; and
(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state ...
Miss.Code Ann. § 93-25-101 (Supp.2001). Again, the purpose is to designate one state and one state only as the jurisdiction to consider modification. The first provision to assure that result is understandable: if any of the relevant individuals still reside in the state in which the support order was issued, that state retains continuing exclusive jurisdiction. None of these parties remained in California, so that rule is satisfied. The third requirement of personal jurisdiction is not only reasonable, it is constitutionally necessary. That too was met here.
¶ 16. It is the second requirement that is surprising: Mississippi cannot be the residence of the person seeking the modification of support. That is the alleged defect here. The mothera resident of Mississippifiled the counterclaim for modification of support. Despite that Halley was a resident, the chancellor proceeded to grant her counterclaim. However, Nelson had already petitioned for modification of support for one of the children since he wanted custody of that child. We need not decide if the jurisdictional lines *47 can that finely be drawn. It may be that by requesting modification of support for one child, Nelson allowed the court to proceed with all support issues. The parties' explicit and written consent, discussed below, applies to modifying support of all three children. This allows us to leave for another day the questions of whether Nelson voluntarily submitted himself to the jurisdiction of the Forrest County Chancery Court for all purposes when he filed his complaint or even whether he lacked standing to raise the jurisdictional issue.
¶ 17. To understand the significance of the UIFSA requirements, it is helpful to look at the comments to the Uniform Act. Such acts are prepared by what is called the National Conference of Commissioners on Uniform State Laws. That group was formed at the encouragement of the American Bar Association in 1892 and consists of members from each state appointed by state governors. The Conference has various committees that draft proposals in different subject-matter areas for consideration by the full membership. Over 200 uniform laws have been proposed, with uneven results. James J. White, Ex Proprio Vigore, in Symposium: One Hundred Years of Uniform State Laws, 89 MICH. L.REV. 2096, 2097 & 2103-2105 (1991). A proposed uniform law has official comments by which those who drafted it elaborate on its meaning. Though the Mississippi legislature did not adopt the comments, the legislature's all-but verbatim adoption of the act itself suggests that this particular project received a vote of legislative approval. Moreover, the need for uniformity among the states makes the single set of comments by the original drafters helpful in maintaining that uniformity as the individual but similar state statutes are interpreted.
¶ 18. Just as one example, the Mississippi Supreme Court examined the official comments in interpreting the Uniform Child Custody Jurisdiction Act. In re Custody of Jackson, 562 So.2d 1271, 1275 (Miss.1990). We do the same for UIFSA.
¶ 19. The provision quoted on not permitting a resident to sue a nonresident in Mississippi for modification is part of section 611 of the Uniform Act. The comments to this section first refer to the importance of continuing exclusive jurisdiction resting in one state only:
As long as the issuing state retains its continuing, exclusive jurisdiction over its child support order, a registering sister state is precluded from modifying that order. This is a very significant departure from the multiple-order, multiple-modification system of [the old act]. However, if the issuing state no longer has a sufficient interest in the modification of its order under the factual circumstances described in this section, after registration the responding state may assume the power to modify.
9 ULA "Uniform Interstate Family Support Act" § 611 cmts. (1999).
¶ 20. The comments distinguish using registration in order to enforce an order from another state, which is relatively liberal in availability, and using it to permit modification. The latter use is much more restricted:
Under UIFSA, registration is subdivided into distinct categories: registration for enforcement, for modification, or both. UIFSA is based on recognizing the truism that when a foreign support order is registered for enforcement, the rights of the parties affected have been previously litigated. Because the obligor already has had a day before an appropriate tribunal, an enforcement remedy may be summarily invoked. On the other hand, modification of an existing *48 order presupposes a change in the rights of the parties.... The requirements for modification of a child support order are much more explicit and restrictive under UIFSA.
Id. The purpose of this section is to create certainty as to the single state that can modify.
¶ 21. In pursuit of certainty, a necessary rigidity is created.
This section, which is a counterpart to Section 205(b) [Miss.Code Ann. § 93-25-17] (Continuing, Exclusive Jurisdiction), establishes the conditions under which the continuing, exclusive jurisdiction of the issuing tribunal is released. The degree to which new standards are established is illustrated by comparing UIFSA to the Uniform Child Custody Jurisdiction Act. Sections 12-14 of the UCCJA provide general principles for the judicial determination of an appropriate fact situation for subsequent modification of an existing custody order by another court. In contrast, UIFSA establishes a set of "bright line" rules which must be met before a tribunal may modify an existing child support order. The intent is to eliminate multiple support orders to the maximum extent possible consistent with the principle of continuing, exclusive jurisdiction that pervades the Act.
Id. What is especially telling for us in this comment is that jurisdiction for child custody, set out in a uniform act prepared by the same drafters and also adopted in Mississippi, is subject to more flexibility than is that for changes in child support. In the legal jargon, "bright line" rules are created for child support modification purposes.
¶ 22. The issuing state retains continuing, exclusive jurisdiction until some other state acquires it. Under UIFSA Section 205 (Miss.Code Ann. § 93-25-17), this jurisdiction by the original tribunal remains intact as long as one parent or the child remains in that state, or unless the parties mutually agree to the contrary. Once both parents and the child have left the original state, the continuing, exclusive jurisdiction of that state's tribunal may well have terminated, but its order remains in effect and enforceable until it is modified by another tribunal with authority to do so. What that next tribunal has to do in becoming the new possessor of continuing, exclusive jurisdiction is set out in this section that we are examining. Once properly acquired, that jurisdiction causes the next state's order to be the operative "controlling order."
¶ 23. The requirement that the new state cannot be the state of residence of the party seeking the modification (when the obligor lives in a different state) "attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party." 9 ULA "Uniform Interstate Family Support Act" § 611 cmt. A visit by the father who lives in one state to the children who are staying with the mother as custodial parent in another state, does not permit her to serve process on him while he is in town for modifying support. Such service would create personal jurisdiction, but it does not create jurisdiction under Mississippi's statute for modifying support.
In short, the obligee is required to register the existing order and seek modification of that order in a state which has personal jurisdiction over the obligor other than the state of the obligee's residence. Most typically this will be the state of residence of the obligor. Similarly, fairness requires that an obligee seeking to modify or modify and enforce the existing order in the state of *49 residence of the obligor will not be subject to a cross-motion to modify custody or visitation merely because the issuing state has lost its continuing, exclusive jurisdiction over the support order. The obligor is required to make that motion in a state other than that of his or her residence; most likely, the obligee's state of residence.
Id. What we glean from these comments is a fairly straightforward approach under the Mississippi statute. Absent consent, which we address next, the custodial parent living in Mississippi and receiving support on behalf of the couple's offspring cannot bring suit in this state against the supporting parent who resides elsewhere regardless of personal jurisdiction.

C. Requirements of Consent
¶ 24. Section 93-25-101 creates a procedure for the parties to consent to try the issue in Mississippi despite that it is neither the state in which the custody was issued nor the one in which the obligor lives. It is this provision that alters traditional subject matter jurisdiction rules. Even though a Mississippi court in following the procedures that recognize the multistate nature of child support issues would not have the right to enter a modification, once knowing consent under this provision is given, the parties may proceed in this state.
¶ 25. That consent be given consistently with UIFSA is important for the foreign enforcement of Mississippi's order. As will be explained, if the requirements are met, this state acquires continuing exclusive jurisdiction, and its orders must then be treated by other states as would those of the original stateCalifornia in the present case.
¶ 26. Mississippi's version of the uniform act states that a chancery court here must recognize a "modification of its [Mississippi's] earlier child support order by a tribunal of another state which assumed jurisdiction pursuant to this chapter" or a statute substantially similar. Miss.Code Ann. § 93-25-103 (Supp.2001). Variations from the statutory procedures create jurisdictional issues when enforcement of the modification is sought in another state. Simply put, the new state must decide whether the state that modified a support order followed essentially similar procedures. From the opposite perspective, a Mississippi chancellor called on to enforce some other state's order, including a modification, must decide whether the modification was by a court that had validly obtained continuing exclusive jurisdiction. Miss.Code Ann. § 93-25-21(2) (Supp.2001). Each state of the Union that has adopted UIFSA has mutual and overlapping responsibilities with other such states. This makes necessary some precision in following the statutory rules.
¶ 27. When a Mississippi chancellor has complied with these procedures and then files a certified copy of the modified order with the preceding state that had exclusive jurisdiction, the chancery court here acquires that exclusive authority. Miss.Code Ann. § 93-25-105 (Supp.2001).
¶ 28. Consent is to be shown in this manner:
(b) The child or a party who is an individual is subject to the personal jurisdiction of the tribunal of this state and all of the parties who are individuals have filed written consents in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order. However, if the issuing state is a foreign jurisdiction that has not enacted a law or established procedures substantially similar to the procedures under this chapter, the consent of an individual residing in this state is not required for *50 the tribunal to assume jurisdiction to modify the child support order.
Miss.Code Ann. § 93-25-101(1)(b) (Supp. 2001). There is no evidence that a written consent was filed in the California court. The actual filing is a simple act. Parties may fully be aware of UIFSA's requirements and believe that their signed consent had been filed, only to find out late in the proceedings that it was not. We have no difficulty in concluding that the reality of the consent needs to exist, but a late filing of it does not affect the chancery court's jurisdiction. At least that would be so unless an intervening order appears from some other state that did comply with UIFSA.
¶ 29. Therefore, the issue remaining is whether the parties ever executed "written consents ... for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction over the order." Miss.Code Ann. § 93-25-101(1)(b) (the ellipsis indicates the omitted reference to filing the consents in California). An agreed temporary order on custody was entered ten days after suit was filed. Signed by both parents and counsel as well as the chancellor, the relevant words are these:
Pursuant to the Uniform Child Custody Jurisdiction Act and the consent of the parties hereto, this Court has jurisdiction of the parties and the subject matter hereof and in particular assumes jurisdiction to determine all matters pertaining to the custody, support, maintenance and visitation of the children of the parties' marriage: [then names all three children and dates of birth], including but not limited to, jurisdiction to modify and/or enforce any provisions contained [in the California judgment.]
¶ 30. There is no reference to "continuing exclusive jurisdiction," but by consenting to the chancellor's blanket authority to modify the support order, the parties were consenting to the acquisition of exclusive jurisdiction. Had a certified copy of this September 20, 1999 agreement been filed in the California court, the filing would have satisfied the requirements of consent. On remand, a certified copy of this agreed temporary order should immediately be filed with the California court. Likewise, a certified copy of the final order entered after remand is to be filed within thirty days of that order; the filing needs also to be made in each state in which the support order had been registered. Miss. Code Ann. §§ 93-25-101(1)(b) & 93-25-105.
¶ 31. We find that this resolution is bolstered by the explanation in the UIFSA official comments of the goals being achieved by limited jurisdiction. First is the avoidance of "jurisdiction by ambush" that arises when a spouse is in the state for other purposes being found by a process server. Second, jurisdictional questions are much more readily resolved. Practically all cases would be brought in the obligor's state. The UIFSA gives the colloquial explanation that someone seeking modification of support must play an "away" game on the opponent's home field. Finally, the focus shifts from modification to enforcement. 9 ULA Uniform Interstate Family Support Act § 611 cmt. What is to be avoided are multiple orders in multiple states without any initially knowing of the others. Continuing exclusive jurisdiction in one state at a time creates a clearinghouse for the actions of a new state. Ambush jurisdiction is avoided for what could be protracted litigation.
¶ 32. We find nothing in our resolution of this case that undermines these interests.

*51 2. Validity of modification

¶ 33. Having found that the chancellor had jurisdiction, we must then review the modification terms. The chancellor decreed that it was against public policy to permit support to end for a child before age twenty-one. Child support under the California support order terminated when one of three conditions was met: (a) the child's attainment of age eighteen; (b) the attainment of age nineteen, if the child was still in high school and residing with a parent; or (c) marriage, death, or emancipation of the child.
¶ 34. The chancellor's applying a public policy amendment to the support order was incorrect. If there is a public policy involved, it is to prevent parents who are being paid support on behalf of children from seeking out states for sufficient but temporary residence in order to seek modification because of such distinctions. More important than policy, a legislative command prevents the modification:
(3) A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state. If two (2) or more tribunals have issued child support orders for the same obligor and child, the order that controls and must be so recognized under the provisions of Section 93-25-21 establishes the aspects of the support order which are nonmodifiable.
Miss.Code Ann. § 93-25-101 (Supp.2001). In California, the recipient spouse would not be able to claim that twenty-one is the proper age for termination of support and thereby seek a modification. The ages set out in this 1988 judgment express the statutory duration of the duty of support, which can be lengthened by agreement. Cal. Family Code § 3901 (2001). There was objection here, not consent. Thus, this part of the original support order is unmodifiable.
¶ 35. We reverse the change in the end dates for support, and remand for such proceedings as are necessary to determine whether Nelson has complied with his obligations under the original decree.

3. Enforcement of Support Order
¶ 36. The chancellor had authority to enforce the existing support order even had there been no consent for a modification. Personal jurisdiction over the party whose support obligation allegedly has not been fulfilled is sufficient to give the court enforcement authority. Miss.Code Ann. § 93-25-93(1)(a) (Supp. 2001). The threshold requirement of registration applies to enforcement of an out-of-state order. The order was registered and therefore can be enforced in Mississippi. Miss.Code Ann. § 93-25-85(3) (Supp.2001).
¶ 37. The chancellor enforced the award in two respects. By increasing the obligation of support until each child reached twenty-one years of age, the chancellor created an arrearage. We have reversed any arrearage that arises from that modification. Secondly, there were certain medical expenses that were found to be unpaid.
¶ 38. In the September 1999 temporary order that created the consent to jurisdiction, it was agreed that Nelson would pay "$378.33 per month as child support for any remaining minor children of the marriage" who were in her custody, while Halley did not have to pay any support for their son. According to Halley's testimony at the evidentiary hearing, this support was properly paid until June 2000. An exhibit to her testimony indicates that Nelson beginning for June 2000 began paying about half of what was in the agreed order, the new figure being $195.83.
¶ 39. We are uncertain whether the 1999 order required Nelson to pay $378.33 *52 per month so long as either daughter in Halley's custody was a minor, but that is one interpretation of the language. Regardless, we find that beginning in June 2000, Nelson would have had no further support obligation under controlling California law. Support ends under the California decree when a child reaches age nineteen if a high school student residing with a parent, or otherwise at age eighteen. The record reveals that Jennifer graduated from high school in May 1999 and her eighteenth birthday was in the previous January. Kristi graduated in May 2000 and celebrated her eighteenth birthday that same month. Thus both girls were emancipated prior to June 1, 2000, and support ended under California law. That is the law we must apply here on this point.
¶ 40. Besides monthly support, Nelson was, until his daughters reached the age of majority, obligated to pay half of their medical expenses. There is a $400 medical bill for Jennifer after she was emancipated for which Nelson was assessed. The chancellor in the March 2001 final judgment stated that "pursuant to the admissions and stipulations of the parties," Jennifer was emancipated on June 1, 2000 when she left home to live on her own. We find no stipulation or admission by Nelson that Jennifer was not emancipated until that time, but that may not be what the chancellor meant.
¶ 41. For this and other reasons, we are unable to determine from this record the validity of certain parts of the arrearage. We also do not know if during the pendency of the appeal Nelson continued to pay support under the chancellor's ruling that Mississippi law on age of majority applied to Kristi, who as of the date of our opinion is not yet an adult. We remand to the chancellor for a factual determination of when Nelson's support obligations as to the daughters ceased under the terms of the California order, and whether Nelson had stipulated or admitted to a later date. Any necessary award can then be made.

4. Attorney's fees
¶ 42. Since we have found that most of what Halley was granted by the chancellor was improper, we reverse the entirety of the attorney's fees. If in fact Nelson has failed to comply with some parts of his obligations of support as unmodified, then the chancellor may reconsider the issue of attorneys' fees necessary to enforce that order.
¶ 43. The reconsideration can include some portion of the fees incurred during the original proceedings to the extent they are allocable to proper enforcement claims.

5. Modification of custody
¶ 44. Finally, the chancellor awarded custody of Tommy to his father. Modification of custody is governed by a separate uniform law, the Uniform Child Custody Jurisdiction Act (UCCJA). Miss. Code Ann. §§ 93-23-1, et seq. (Rev.1994). Here, the chancellor was granted both jurisdiction and authority to modify by statute. Miss.Code Ann. §§ 93-23-5; 93-23-9; 93-23-27 (Rev.1994). We therefore affirm the chancellor's order as to custody modification.
¶ 45. THE JUDGMENT OF THE CHANCERY COURT OF FORREST COUNTY IS AFFIRMED AS TO THE CHANGE IN CUSTODY, IS REVERSED AND RENDERED AS TO THE MODIFICATION IN THE DATES FOR TERMINATION FOR SUPPORT, AND IS REVERSED AND REMANDED AS TO DETERMINATION OF AN ARREARAGE AND FOR ATTORNEYS' FEES. COSTS OF THE APPEAL ARE ASSESSED EQUALLY TO THE PARTIES.
*53 McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, AND CHANDLER JJ., CONCUR. LEE, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY THOMAS AND MYERS, JJ. BRANTLEY, J., NOT PARTICIPATING.
LEE, J., CONCURRING:
¶ 46. I concur but for a different reason than that of the majority. "Our scope of review in domestic relations matters is limited under the familiar rule that this Court will not disturb a chancellor's findings unless manifestly wrong, clearly erroneous, or if the chancellor applied an erroneous legal standard." Thrift v. Thrift, 760 So.2d 732 (¶ 10) (Miss.2000). Thomas suggests that Miss.Code Ann. § 93-25-101 controls this situation. That statute reads in part:
(1) After a child support order issued in another state has been registered in this state, unless the provisions of Section 93-25-107 apply [all parties reside in state and child does not live in issuing state], the responding tribunal of this state may modify that order only if Section 93-25-107 does not apply and, after notice and hearing, it finds that:
(a) The following requirements are met:
(i) The child, the individual obligee and the obligor do not reside in the issuing state;
(ii) A petitioner who is a nonresident of this state seeks modification; and
(iii) The respondent is subject to the personal jurisdiction of the tribunal of this state....
Miss.Code Ann. § 93-25-101 (Supp.2002). Thomas would have us believe that Mississippi has no authority to modify the California child support decree because of (ii) above which he claims requires that the petitioner be a nonresident, which Kathleen is not. To the contrary, I read this provision not to be restrictive towards nonresidents, but rather to apply only when the petitioner is a nonresident, not to be read to the inclusion of persons who are residents, such as Kathleen.
¶ 47. Thomas registered the California order in the Forrest County Chancery Court. He also filed his petition for modification in Forrest County, thereby consenting to jurisdiction for subsequent matters touching and concerning child custody or support matters. When Kathleen filed her counterclaim for increased child support, she did so under the authority conferred by Thomas's actions in recognizing and the Forrest County chancellor's exercise of jurisdiction over this matter. I find the chancellor's finding that jurisdiction was proper in Forrest County for both the child custody matter and petition for modification to be correct. The majority finds that the chancellor only gained jurisdiction of Kathleen's counterclaim because Thomas entered into a separate consent agreement.
¶ 48. Thomas argues that Forrest County never gained jurisdiction over this matter; thus, the chancellor had no authority to modify the support order. Miss. Code Ann. § 93-25-19(3) (Supp.2002). Again, I disagree with Thomas's reasoning, finding that by virtue of his filing and the language contained in his petition that he not only consented to have the Forrest County chancellor adjudicate the child custody matter, he thereby consented to jurisdiction concerning all matters which touch and concern the children, including child support matters.
¶ 49. In his complaint for modification of custody, Thomas states the following:
11. That this Court has jurisdiction over this matter because Mississippi is the "home state" for the Minor Child as *54 defined in Mississippi Code of 1972 Section 93-25-5, as amended (i.e., the Uniform Child Custody Jurisdiction Act). Morever, it is in the best interest of the Minor Child and society that this Court assume jurisdiction because both parents and the Minor Child have a significant connection with Mississippi, and much of the evidence concerning the Minor Child's present and future care is in Mississippi. The Minor Child is physically present in Mississippi, and it reasonably appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (a-c) of Mississippi Code of 1972 Section 93-23-5, as amended.
12. That this Court offers the most convenient forum to modify the Divorce Decree regarding the custody of the Minor Child, as specified and defined in Mississippi Code of 1972 Section 93-25-13, as amended.
13. That, by filing this Cause, Tom has submitted himself voluntarily unto the jurisdiction of this Court.

(emphasis added). "It is well settled in child custody modification cases, that the polestar consideration is the best interest of the child." Rodgers v. Taylor, 755 So.2d 33 (¶ 23) (Miss Ct.App.1999). The chancery courts are vested with the jurisdiction to hear suits for the "custody, care, support and maintenance of minor children and to hear and determine all such matters... to secure any order for periodic payments for the maintenance or support of a child." Miss.Code Ann. § 93-11-65 (Supp. 2002). I find it ludicrous to find on one hand that the Forrest County Chancery Court is vested with jurisdiction over the custody of the child but not the support. I do not subscribe to this piece-meal type of jurisdiction. Under the majority's reasoning, had Thomas not entered into a separate consent agreement, the Mississippi court would have had jurisdiction over the custody and Kathleen would have had to file wherever Thomas lived to gain a change in support. The two theories cannot coexist with one another. Permitting the chancellor to have control over custody and not support in this situation defeats the spirit of equity and certainly does not take into consideration the child's best interest.
¶ 50. I find the evidence clear that Thomas voluntarily submitted himself to the jurisdiction of the Forrest County Chancery Court and, thus, Kathleen properly filed her counterclaim in the same court, and the chancellor did not err. Were we to read the law as Thomas suggests, Kathleen would be forced to respond to Thomas's Mississippi petition for modification of custody by going all the way to his residence in Maryland, or chase him wherever should he move from state to state to file a responsive petition for modification of child support. This, in my view, would defeat the spirit of equity and access to judicial relief.
¶ 51. Kathleen answered Thomas's complaint to modify with a counterclaim which requested the court to apply Mississippi law to determine when the children became emancipated, which was later than the age set by California law. Miss.Code Ann. § 93-11-65(8) (Supp.2002). Under the California decree, Thomas's child support obligation ended when the children reached nineteen if a high school student living with a parent, otherwise at age eighteen. The chancellor found it was against public policy to permit support to end for a child before age twenty-one, which California permitted. However, statutory law in this state forbids we make such a finding. Miss.Code. Ann. § 93-25-101(3) (Supp. 2002) ("A tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of *55 the issuing state.") Therefore, I would reverse on that issue.
¶ 52. The matters of child custody and child support are so hopelessly intertwined that I simply do not see how it could arguably be contended that Thomas's voluntary appearance for the purpose of contesting the custody of one of the multiple children covered in the California judgment was somehow limited solely to that narrow issue. I do not succumb to the thinking that would permit the chancery court to change custody to the father but would be without authority to correspondingly end the father's child support obligation or to require the mother, suddenly finding herself the non-custodial parent, to contribute toward the support of that child. Therefore, I concur in result only.
THOMAS AND MYERS, JJ. JOIN THIS SEPARATE WRITTEN OPINION.