GRIFFIS, J.,
 

 for the Court.
 

 ¶ 1. Gregory Williams Patterson appeals the DeSoto County Chancery Court’s judgment holding him in contempt of court, awarding a $22,500 judgment in favor of Tara Patterson, and modifying the terms of the parties’ original divorce decree. He claims that: (1) the chancery court lacked subject matter jurisdiction to modify the out-of-state divorce decree; (2) the chancellor’s finding of contempt was an abuse of discretion; and (3) the chancellor’s award to Tara was an abuse of discretion. We affirm in part, and reverse and render in part.
 

 FACTS
 

 ¶ 2. Gregory and Tara were married on June 5, 2002. They have one son, Matthew David Patterson, who was born on June 17, 2000. The parties were granted a divorce in New Hampshire on November 18, 2004. After the divorce, Tara moved to DeSoto County, Mississippi, and Gregory moved to Texas to attend law school at the University of Texas. Gregory has since graduated from law school and now lives in Los Angeles, California.
 

 ¶ 3. The parties entered into an agreement that was incorporated into their final divorce decree. That agreement awarded physical custody of Matthew to Tara, and the parties share joint legal custody. Gregory agreed to pay $969 in monthly child support. He further agreed to pay Tara $1,000 per month for a three-year period in consideration of her waiving her interest in the marital home. The agreement refers to this payment as a rent stipend. Gregory has regularly paid his child support; however, he has paid only $18,000 of the total $36,000 rent stipend.
 

 ¶ 4. The agreement also addresses Matthew’s health insurance. It states that Gregory will pay Matthew’s health insurance premiums and that Matthew’s health costs not covered by insurance will be split equally between the parties. The agreement requires that the party incurring an expense not covered by insurance shall request reimbursement from the other party in writing, along with an attached copy of the paid receipt, within thirty days of incurring the expense.
 

 ¶ 5. On July 11, 2006, Tara petitioned the DeSoto County Chancery Court to enroll her final decree of divorce from New
 
 *68
 
 Hampshire. Gregory failed to appear in the matter, and the chancery court granted the petition by enrolling the final decree in Mississippi and giving such decree full faith and credit.
 

 ¶ 6. Tara filed a petition for contempt on June 16, 2008, alleging that she was owed $18,000 of the rent stipend. She further alleged that Gregory failed to provide medical insurance for Matthew, and he refused to pay one half of Matthew’s medical costs not covered by insurance. A Rule 81 summons was issued to Gregory commanding that he appear and defend on June 30, 2008.
 
 See
 
 M.R.C.P. 81. Gregory was personally served in DeSoto county, and he later filed an answer to Tara’s petition for contempt. He simultaneously filed a motion for a continuance and a motion for dismissal and summary judgment. His motion for a continuance was granted, and the matter was continued until August 18, 2008.
 

 ¶ 7. On that day, Gregory appeared before the chancery court, and a hearing was held on the motions filed by Gregory. He argued that the chancery court lacked jurisdiction to rule on the out-of-state judgment entered in New Hampshire. The chancery court denied Gregory’s motion to dismiss due to lack of jurisdiction because the divorce decree had been enrolled in Mississippi. A second continuance was allowed by the chancellor who entered an order that the matter be continued until September 29, 2008, when it would “be heard in its entirety.”
 

 ¶ 8. Gregory failed to appear before the chancery court on September 29, 2008. In the chancellor’s final order, Gregory was found to be in willful contempt of the divorce decree. Gregory was ordered to pay to Tara $18,000 of the rent stipend and $1,900 for his half of Matthew’s past medical bills. Tara was further awarded $2,600 in attorney’s fees for a total judgment of $22,500. The chancellor also modified the divorce decree to require that Tara maintain Matthew’s health insurance and that Gregory pay for all of Matthew’s health costs not covered by insurance. Gregory now appeals the chancellor’s final order.
 

 ANALYSIS
 

 1. Whether the chancellor had subject matter jurisdiction to modify the New Hampshire divorce decree.
 

 ¶ 9. Gregory argues that the chancellor lacked jurisdiction to modify the out-of-state support order. Specifically, he contends that because he is not a Mississippi resident and because he did not consent to jurisdiction in Mississippi, the chancery court lacked subject matter jurisdiction under the requisites of the Uniform Interstate Family Support Act (“UIFSA”). Tara responds that because the UIFSA was never raised before the chancery court, it cannot be raised here. However, because the UIFSA governs the question of subject matter jurisdiction, it may be raised at any point during the proceedings.
 
 See Esco v. Scott,
 
 735 So.2d 1002, 1006(¶ 14) (Miss.1999). Questions of subject matter jurisdiction are considered de novo.
 
 Richardson v. Stogner,
 
 958 So.2d 235, 237(¶ 5) (Miss.Ct.App.2007).
 

 ¶ 10. “In Mississippi, petitions to modify foreign child support orders are governed by Mississippi’s version of the Uniform Interstate Family Support Act,” codified in Mississippi Code Annotated sections 93-25-1 through 93-25-117 (Rev. 2004).
 
 Nelson v. Halley,
 
 827 So.2d 42, 44(¶ 8) (Miss.Ct.App.2002). Tara further argues that the UIFSA does not apply to this case because Tara’s petition for contempt sought enforcement, not modification, of the support order. While that fact is true, Tara’s attorney requested modification of the order at the hearing, and the
 
 *69
 
 chancellor’s final order does indeed modify the New Hampshire order regarding the issue of health insurance. As such, the requirements for modification under the UIFSA apply to this case.
 

 ¶ 11. This Court, in
 
 Nelson,
 
 set forth the basic framework of the UIFSA:
 

 The first step under the proceedings authorized by this state’s version of UIFSA is to file the foreign judgment in an appropriate chancery court. Once the judgment is registered, the subject matter of this state’s jurisdiction on that foreign judgment depends on the residences of the individuals affected. The subject matter is alterable by consent. Regardless of consent, the judgment can be enforced much more readily than it may be modified.
 

 Id.
 
 at 45(¶ 10).
 

 ¶ 12. Tara enrolled the New Hampshire divorce decree with the Chancery Court of DeSoto County. The procedure to register an order under the UIFSA is set forth in Mississippi Code Annotated section 93-25-83. While Tara’s filing did not follow the exact form set forth in that section, this Court held in
 
 Nelson
 
 that exact form is not required when the “most important information for registration is filed in the correct chancery clerk’s office.”
 
 Nelson,
 
 827 So.2d at 45(¶ 12). Here, Tara’s filing included the divorce decree, the parties’ agreement, and listed the state of residence for both parties. A Rule 81 summons was issued to Gregory, and a hearing was set on the petition for enrollment of the divorce decree. Gregory did not appear or object to the enrollment of the judgment. As in
 
 Nelson,
 
 we find that the New Hampshire decree was adequately registered in Mississippi.
 

 ¶ 13. Because the New Hampshire judgment was registered in Mississippi, modification of the child support provisions are governed by Mississippi Code Annotated section 93-25-101 of the UIFSA, which states the following:
 

 (1) If Section 93-25-107
 
 [1]
 
 does not apply, except as otherwise provided in Section 93-25-108,
 
 [2]
 
 upon petition, a tribunal of this state may modify a child support order issued in another state which is registered in this state, if, after notice and hearing, it finds that:
 

 (a) The following requirements are met:
 

 (i) Neither the child, nor the obli-gee who is an individual, nor the obligor resides in the issuing state;
 

 (ii)
 
 A petitioner who is a nonresident of this state seeks modification;
 
 and
 

 (iii) The respondent is subject to the personal jurisdiction of the tribunal of this state; or
 

 (b) This state is the state of residence of the child, or a party who is an individual is subject to the personal jurisdiction of the tribunal of this state, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.
 

 (2) Modification of a registered child support order is subject to the same requirements, procedures and defenses that apply to the modification of an order issued by a tribunal of this state and
 
 *70
 
 the order may be enforced and satisfied in the same manner.
 

 (3) Except as otherwise provided in Section 93-25-108, a tribunal of this state may not modify any aspect of a child support order that may not be modified under the law of the issuing state, including the duration of the order of support. If two (2) or more tribunals have issued child support orders for the same obligor and the same child, the order that controls and must be so recognized under the provisions of Section 93-25-21 establishes the aspects of the support order which are nonmodifiable.
 

 (4) In a proceeding to modify a child support order, the law of the state that is determined to have issued the initial controlling order governs the duration of the obligation of support. The obligor’s fulfillment of the duty of support established by that order precludes imposition of a further obligation of support by a tribunal of this state.
 

 (5) On issuance of an order by a tribunal of this state modifying a child support order issued in another state, the tribunal of this state becomes the tribunal of continuing, exclusive jurisdiction.
 

 Miss.Code Ann. § 93-25-101 (emphasis added).
 

 ¶ 14. The issue in this case is subsection (l)(a)(ii) that requires the party petitioning the court for modification of the support order be a nonresident of Mississippi. Here, Tara was the petitioner, and she is a Mississippi resident. Thus, the requirements for modification in section 93-25-101 were not satisfied.
 

 ¶ 15. This very issue was explained by this Court in
 
 Nelson:
 

 The issuing state retains continuing, exclusive jurisdiction until some other state acquires it. Under UIFSA Section 205 (Miss.Code Ann. § 93-25-17), this jurisdiction by the original tribunal remains intact as long as one parent or the child remains in that state, or unless the parties mutually agree to the contrary. Once both parents and the child have left the original state, the continuing, exclusive jurisdiction of that state’s tribunal may well have terminated, but its order remains in effect and enforceable until it is modified by another tribunal with authority to do so. What that next tribunal has to do in becoming the new possessor of continuing, exclusive jurisdiction is set out in this section that we are examining [section 93-25-101]. Once properly acquired, that jurisdiction causes the next state’s order to be the operative “controlling order.”
 

 The requirement that the new state cannot be the state of residence of the party seeking the modification (when the obli-gor lives in a different state) “attempts to achieve a rough justice between the parties in the majority of cases by preventing a litigant from choosing to seek modification in a local tribunal to the marked disadvantage of the other party.” 9 ULA “Uniform Interstate Family Support Act” § 611 cmt. A visit by the father who lives in one state to the children who are staying with the mother as custodial parent in another state, does not permit her to serve process on him while he is in town for modifying support. Such service would create personal jurisdiction, but it does not create jurisdiction under Mississippi’s statute for modifying support.
 

 In short, the obligee is required to register the existing order and seek modification of that order in a state which has personal jurisdiction over the obligor other than the state of the obligee’s residence. Most typically this will be the state of residence of the obligor. Similarly, fairness requires that an obligee seeking to mod
 
 *71
 
 ify or modify and enforce the existing order in the state of residence of the obligor will not be subject to a cross-motion to modify custody or visitation merely because the issuing state has lost its continuing, exclusive jurisdiction over the support order. The obli-gor is required to make that motion in a state other than that of his or her residence; most likely, the obligee’s state of residence.
 

 Id.
 
 What we glean from these comments is a fairly straightforward approach under the Mississippi statute. Absent consent, which we address next, the custodial parent living in Mississippi and receiving support on behalf of the couple’s offspring cannot bring suit in this state against the supporting parent who resides elsewhere-regardless of personal jurisdiction.
 

 Nelson,
 
 827 So.2d at 48-49 (¶¶ 22-23). We went on to find that the obligor in
 
 Nelson
 
 had given written consent to jurisdiction in Mississippi satisfying the requirements in section 93 — 25—101(b) of the UIFSA.
 
 Id.
 
 at 50(¶ 29). Such is not the case here because Gregory has consistently, beginning with his original answer to the petition for contempt, challenged the chancery court’s subject matter jurisdiction.
 

 ¶ 16. Consistent with the language of section 93 — 25—101(1)(a)(ii) of the UIFSA and our holding in
 
 Nelson,
 
 we find that the chancery court lacked subject matter jurisdiction to modify the provision of the New Hampshire decree concerning health insurance and health costs.
 

 2. Whether the chancellor’s finding of contempt ivas an abuse of discretion.
 

 ¶ 17. Pursuant to the UIFSA, a Mississippi court may exercise personal jurisdiction over a respondent for the purposes of enforcing a support order if the respondent is personally served with process within this state. Miss.Code Ann. § 93-25-9(a) (Rev.2004). Gregory was personally served in DeSoto County; thus, the chancery court had jurisdiction over him for the purposes of enforcing the order. As such, this Court will not disturb the findings of a chancellor when supported by substantial evidence unless the chancellor abused his or her discretion, was manifestly wrong, clearly erroneous, or applied an erroneous legal standard.
 
 Sanderson v. Sanderson,
 
 824 So.2d 623, 625-26(¶ 8) (Miss.2002).
 

 ¶ 18. Gregory argues that the chancellor’s finding of contempt due to Gregory’s failure to pay $18,000 of the rent stipend was an abuse of discretion. Specifically, he contends that Tara had unclean hands and could not properly petition for contempt, and Tara’s breach of the language of the divorce decree discharged his obligation to pay the rent stipend. Tara responds that Gregory failed to appear at the hearing on contempt and present his defenses. She further asserts that the finding of contempt was well within the chancellor’s broad discretion.
 

 ¶ 19. The section of the parties’ agreement incorporated into their divorce decree titled “marital homestead” states the following:
 

 A. The partiesf] marital homestead shall be sold with the proceeds, if any, being awarded to Gregory free and clear of any interest of Tara. Tara believes that Gregory is responsible for setting the fire to the house[,] and the insurance company on the homeowner’s policy has not yet paid on the policy. As this was a short[-]term marriage, and Gregory paid for all of the items in the home, Tara’s interest was not significant.
 

 B. In consideration for Tara waiving her interest in the marital home, Gregory has agreed to give Tara a $1,000.00
 
 *72
 
 monthly stipend for rent for a period of three years commencing December 1, 2004. To the extent that Tara precludes access to Matthew, then Gregory’s obligation to pay Tara’s rent shall cease.
 

 ¶ 20. The chancellor found that Gregory was in willful and obstinate contempt of court for the nonpayment of half of the total rent stipend — $18,000. Gregory admits that he willfully withheld half of the total rent stipend. The parties’ agreement concerning visitation states: “Both parties shall have access to Matthew via either telephone or videophone 5 times per week when Matthew is in the custody of the other party.” Gregory claims that because Tara frustrated his telephone and videophone communications with Matthew, she effectively precluded his access to Matthew; thus, Gregory claims he is no longer required to pay the rent stipend because it was contingent on his access to Matthew.
 

 ¶ 21. Property settlements that are incorporated into a divorce decree become part of the final judgment for all legal intents and purposes.
 
 Switzer v. Switzer,
 
 460 So.2d 843, 845 (Miss.1984). “A true and genuine property settlement agreement is no different from any other contract, and the mere fact that it is between a divorcing husband and wife, and incorporated in a divorce decree, does not change its character.”
 
 East v. East,
 
 493 So.2d 927, 931-32 (Miss.1986). When a question of interpretation of a contract is presented, we first look to the actual language of the agreement.
 
 West v. West,
 
 891 So.2d 203, 210(¶ 14) (Miss.2004) (citation omitted). “When the language of the contract is clear or unambiguous, we must effectuate the parties’ intent.”
 
 Id.
 

 ¶ 22. It is clear from the language of the agreement that the monthly rent stipend was part of a property settlement in exchange for Gregory retaining full ownership of the marital home. The language of the agreement is also clear that Gregory was to pay Tara $1,000 per month for three years.' Gregory argues that the final sentence creates ambiguity: “To the extent that Tara precludes access to Matthew, then Gregory’s obligation to pay Tara’s rent shall cease.” However, we find no ambiguity in the language of this sentence.
 

 ¶ 23. It is undisputed that Gregory has been allowed visitation with Matthew at any time he travels to Mississippi to see Matthew. Gregory’s only proof that Tara precluded access to Matthew is his own claim, and that of Gregory’s girlfriend, that Tara has not answered his phone calls to Matthew each and every week night. While this could be considered a violation of the visitation provision of the agreement, we do not find that it constitutes the preclusion of access to Matthew. Further, there is no proof that Tara is responsible for the missed phone calls.
 
 Gregory
 
 claims that Matthew has been at the movies, eating dinner at a restaurant, or engaged in other activities when he tried to call. This Court cannot say that a child engaged in normal activities who is unable to receive a nightly phone call from his father is proof enough that should disqualify Tara from receiving the rent stipend representing her interest in the marital home. As such, the chancellor properly enforced the language of the parties’ agreement. Therefore, this issue has no merit.
 

 3. Whether the chancellor’s award to Tara was an abuse of discretion.
 

 ¶ 24. Gregory finally argues that the chancellor’s award was an abuse of discretion. Specifically, he claims that there is no proof of the $1,900 in past medical bills due from him or of the validity of the $2,600 in attorney’s fees.
 

 
 *73
 
 ¶ 25. The only proof of the amount of past medical bills owed by Gregory under the provisions of the divorce decree are the statements of Tara’s counsel at the final hearing in the matter. Counsel for Tara twice stated that the medical bills totaled $3,000 and that Gregory was responsible for half, or $1,500. There is no explanation in the record or in the chancellor’s final judgment as to why $1,900 in medical bills was awarded to Tara. Further, Tara does not attempt to defend this increase in her brief; in fact, her brief avoids the issue altogether. Thus, we find that this is error and order that the judgment be reduced to $1,500 in past medical bills.
 

 ¶ 26. As to Tara’s attorney’s fees, such award is appropriate when there has been a finding of contempt.
 
 Gardner v. Gardner,
 
 795 So.2d 618, 619(¶ 4) (Miss. Ct.App.2001). No showing as to the
 
 McKee
 
 factors is required.
 
 Id.
 
 Because the chancellor did not abuse her discretion in finding that Gregory was in contempt, we find that the award of attorney’s fees was appropriate.
 

 CONCLUSION
 

 ¶ 27. We find that the chancellor lacked subject matter jurisdiction to modify the child support provisions of the parties’ New Hampshire divorce decree. Thus, the modifications concerning health insurance premiums and other health expenses are reversed. The chancellor’s finding of contempt was not an abuse of discretion; however, the total award is reduced to $22,100 due to the discrepancy in the proof offered at the hearing and the chancellor’s final order concerning past due medical bills.
 

 ¶ 28. THE JUDGMENT OF THE DE-SOTO COUNTY CHANCERY COURT IS AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.
 

 ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANT AND APPELLEE.
 

 KING, C.J., LEE, P.J., BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. IRVING, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. MYERS, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.
 

 [1]
 

 . Section 93-25-107 requires that both parents reside in Mississippi.
 

 [2]
 

 . Section 93-25-108 governs modification of a child support order of a foreign country or political subdivision.