MAXWELL, J.,
 

 for the Court:
 

 ¶ 1. Clinton Evans filed suit against the Mississippi Department of Human Services, d/b/a Warren County Department of Human Services, Child Support Division (MDHS), in the Circuit Court of Warren County. Evans essentially claimed MDHS mishandled child-support funds deducted from his wages, failed to properly account for his payments, converted those funds, caused him emotional distress, and defamed him while carrying out its duties to administer his child-support obligation. The circuit judge granted MDHS’s motion for summary judgment and declined to rule on several other pending motions filed by Evans and MDHS. Finding genuine issues of material fact exist regarding MDHS’s negligent accounting and disbursing, we reverse and remand on these issues. We affirm the grant of summary judgment on the remaining issues.
 

 FACTS
 

 ¶ 2. On October 8, 2003, Clinton and Qiana Evans were divorced in Louisiana, and a Louisiana district court ordered Evans to pay $800 per month in child support to Qiana. After the divorce, Qiana remained in Louisiana where she retained custody of the three children, and Evans moved to Vicksburg, Mississippi. The Louisiana child-support obligation was then registered in Mississippi.
 

 ¶ 3. In 2004, Evans’s employer reduced Evans’s work hours and periodically laid him off. Because Evans was no longer able to pay $800 per month, he filed a joint motion with MDHS in the Warren County Chancery Court to modify his child-support obligation. Qiana submitted an affidavit that Evans was not in arrears on his child-support payments, but the affidavit did not reflect that she agreed to the reduction. On November 15, 2004, the chancery court entered an agreed order modifying the Louisiana support order. The agreed order reduced Evans’s monthly support obligation from $800 to $400. The chancery court entered its Order for Withholding on January 8, 2005, directing Evans’s employer(s) to withhold the $400 monthly obligation and to remit it to MDHS.
 

 ¶ 4. A few months after entry of the agreed order, MDHS began deducting $400 in child support from Evans’s wages each month. On April 6, 2005, an Assistant District Attorney with Louisiana’s 21st Judicial District, faxed a letter to a MDHS attorney, seeking clarification about the reduction in Evans’s support obligation. The letter noted that Qiana had complained about the reduction. The State of Louisiana also sought information about Mississippi’s authority for modifying the Louisiana support order from $800 to $400 per month.
 

 ¶ 5. Docket entries reflect that after receiving the inquiry from Louisiana, on June 27, 2005, MDHS filed a motion in the Warren County Chancery Court to set aside the agreed order. MDHS ultimately filed three motions in the chancery court arguing the November 15, 2004, agreed order was invalid because Qiana did not consent to modification as required by the Uniform Interstate Family Support Act (UIFSA).
 
 See
 
 Miss.Code Ann. § 93-25-101 (Rev.2004). MDHS claimed the agreed order was void as a matter of law; therefore, Evans still owed $800 per month pursuant to the valid Louisiana order. The chancellor, however, refused to hear the motions because Evans had not been served with process.
 

 
 *467
 
 ¶ 6. Records indicate MDHS enforced the Mississippi agreed order until termination of Evans’s support obligation in June 2007. Thus, MDHS required $400 be withheld from Evans’s wages each month. The Louisiana Department of Social Services (LDSS), however, maintained that its original $800 support order controlled.
 

 ¶ 7. On May 18, 2007, Evans filed a complaint for declaratory judgment against MDHS in the Chancery Court of Warren County seeking to enforce the $400 agreed order. He also sought monetary damages Jfrom MDHS for the infliction of emotional distress he alleged resulted from MDHS’s mishandling of his child-support obligation. MDHS responded that Evans failed to comply with the Mississippi Tort Claims Act’s (MTCA) notice requirements. The chancellor agreed and dismissed Evans’s claims without prejudice.
 

 ¶ 8. On June 4, 2007, a Louisiana district court entered an order awarding physical custody of the children to Evans. It also terminated Evans’s child-support obligation and determined he was not in arrears on his support obligation.
 

 ¶ 9. Thereafter, Evans sued MDHS under the MTCA in the Warren County Circuit Court. He alleged MDHS: (1) wrongly caused the suspension of his driver’s license, encumbrance of his bank account, interception of his tax return, and damaged his credit history, (2) intentionally or negligently inflicted emotional distress upon him; (3) fraudulently converted his child-support obligations to its own use; (4) failed to properly account or credit him for child-support obligations deducted from his wages and did not transmit payments to Qiana and his children. MDHS moved for summary judgment claiming it was generally immune from Evans’s claims under the MTCA. The circuit court granted summary judgment and found that MDHS did not breach its duty of ordinary care in abiding by a lawful order of a foreign jurisdiction — the $800 per month Louisiana support order — which was registered in Mississippi and had not been properly modified by the Mississippi chancery court. Accordingly, the circuit court held that MDHS was immune from liability under Mississippi Code Annotated section 11^16-9(l)(b) (Supp.2009). The circuit court reasoned it could not be shown that MDHS failed to act with ordinary care in directing the withholdings from Evans’s wages and for imposing statutorily permitted sanctions relating to Evans’s delinquent support payments. Evans now appeals.
 

 STANDARD OF REVIEW
 

 ¶ 10. This Court applies a de novo standard of review to the grant of summary judgment by a trial court.
 
 Hill v. Carroll County,
 
 17 So.3d 1081, 1084 (¶ 7) (Miss.2009) (citing
 
 Channel v. Loyacono,
 
 954 So.2d 415, 420 (¶ 12) (Miss.2007)). Under Mississippi Rule of Civil Procedure 56(c), summary judgment is proper “if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.”
 

 ¶ 11. In
 
 Celotex Corp. v. Catrett,
 
 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), the United States Supreme Court explained the application of the identical Rule 56(c) of the Federal Rules of Civil Procedure. The Supreme Court stated:
 

 [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to
 
 *468
 
 that party’s ease, and on which that party will bear the burden of proof at trial. In such a situation, there can be “no genuine issue as to any material fact,” since a complete failure of proof concerning an essential element of the nonmoving party’s case necessarily renders all other facts immaterial. The moving party is “entitled to a judgment as a matter of law” because the nonmov-ing party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.
 

 Id.
 

 ¶ 12. MDHS, as the movant, “has the job of persuading the court, first, that there is no genuine issue of material fact and, second, that on the basis of the facts established, [it] is entitled to judgment as a matter of law.”
 
 Fruchter v. Lynch Oil Co.,
 
 522 So.2d 195, 198 (Miss.1988). As the nonmoving party, Evans must support his claim with more than a “mere scintilla of colorable evidence[.]”
 
 Wilbourn v. Stennett, Wilkinson & Ward,
 
 687 So.2d 1205, 1214 (Miss.1996) (citing
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Instead, his evidence must be such that a fair-minded jury could return a favorable verdict.
 
 Id.
 
 (citing
 
 Anderson,
 
 477 U.S. at 248, 106 S.Ct. 2505). “[B]are assertions” are insufficient to avoid summary judgment, and the non-movant may not rest upon mere allegations or denials in its pleadings.
 
 Watson v. Johnson,
 
 848 So.2d 873, 878 (¶ 18) (Miss.Ct.App.2002) (citing
 
 Travis v. Stewart,
 
 680 So.2d 214, 218 (Miss.1996)).
 

 DISCUSSION
 

 I. MTCA
 

 ¶ 13. The MTCA provides the exclusive remedy against a governmental entity or employee for an act or omission giving rise to the suit. Miss.Code Ann. § 11-46-7(1) (Rev.2002). The MTCA provides the state and its political subdivisions immunity. However, that immunity is waived in claims for monetary damages arising from torts committed by government entities or employees while acting in the scope of their employment to the extent set forth in the MTCA. Miss.Code Ann. §§ 11-46-3(1), 11-46-5(1) (Rev.2002). This waiver of immunity is subject to exceptions. Miss. Code Ann. § 11-A6-9. Mississippi Code Annotated section 11-46-9 provides in pertinent part:
 

 (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim:
 

 [[Image here]]
 

 (b) Arising out of any act or omission of an employee of a governmental entity exercising ordinary care in reliance upon, or in the execution or performance of, or in the failure to execute or perform, a statute, ordinance or regulation, whether or not the statute, ordinance or regulation be valid;
 

 [[Image here]]
 

 (d) Based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a governmental entity or employee thereof, whether or not the discretion be abused;
 

 [[Image here]]
 

 Covington County Sch. Dist. v. Magee,
 
 29 So.3d 1, 4 (¶ 7) (Miss.2010) (quoting Miss. Code Ann. § 11-46-9(1)(b), (d)).
 

 ¶ 14. “A duty is discretionary if it requires the official to use her own judgment and discretion in the performance thereof.”
 
 Id.
 
 at 5 (¶ 8) (citing
 
 Stewart ex rel. Womack v. City of Jackson,
 
 804 So.2d 1041, 1048 (¶ 14) (Miss.2002)). However,
 
 *469
 
 an act is deemed ministerial, “(if) the duty is one which has been positively imposed by law and its performance required at a time and in a manner or under conditions which are specifically designated, the duty to perform under the conditions specified not being dependent upon the officer’s judgment or discretion.”
 
 Id.
 
 (quoting
 
 Stewart,
 
 804 So.2d at 1048 (¶ 15)).
 

 ¶ 15. To the extent MDHS’s actions are required by statute they are ministerial. Therefore, it is shielded from liability only if ordinary care is exercised in performing or failing to perform its statutory duties.
 
 Id.
 
 (citing
 
 Stewart,
 
 804 So.2d at 1048 (¶ 15)). The duty of ordinary care is a fact question to be decided by the judge.
 
 Henderson ex rel. Henderson v. Simpson County Pub. Sch. Dist.,
 
 847 So.2d 856, 858 (¶ 6) (Miss.2003) (citing
 
 L.W. v. McComb Separate Mun. Sch. Dist.,
 
 754 So.2d 1136, 1142 (¶ 26) (Miss.1999));
 
 see also Beacham v. City of Starkville Sch. Sys.,
 
 984 So.2d 1073, 1076 (¶ 14) (Miss.Ct.App.2008).
 

 A. MDHS’s statutory duties
 

 ¶ 16. Before deciding Evans’s claims, we find it necessary to review MDHS’s statutory requirements concerning collection and disbursement of child-support payments. We also review its duties relating to modification of foreign child-support orders.
 

 i. Child-Support Duties
 

 ¶ 17. Mississippi Code Annotated section 43-19-31 (Rev.2009) authorizes MDHS to create a child-support unit (CSU). Pertinent to this case, it is the CSU’s authority to secure and collect child support for individuals receiving certain listed benefits. MDHS is also required:
 

 To maintain a Central Receipting and Disbursement Unit to which all payments required by withholding orders and orders for support in all actions to which the Department of Human Services is a party shall be forwarded, and from which child support payments ordered by the court in actions to which the Department of Human Services is a party shall be disbursed to the custodial parent or other such party as may be designated by the court order.
 

 Miss.Code Ann. § 43-19-31(k).
 

 ¶ 18. In addition, section 43-19-31 (Í) requires MDHS to maintain a case registry of records with respect to (i) each case in which MDHS is providing child-support-enforcement services as well as (ii) each support order established or modified in Mississippi. Particularly significant to this case, is the CSU’s responsibility to “coo-perat[e] with other states ... [in] securing compliance with court orders for support of Temporary Assistance for Needy Families (TANF) children[.]” Miss.Code Ann. § 43-19-31(b). The CSU also has
 
 “full responsibility
 
 ” under section 43-19-31 for initiating actions under UIFSA and for responding to actions of other jurisdictions in cases where Mississippi is the responding state. Miss.Code Ann. § 43-19-31®.
 

 ¶ 19. UIFSA is codified in Mississippi Code Annotated sections 93-25-1 through 93-25-117 (Rev.2004) and provides a statutory framework “to facilitate interstate establishment and enforcement of support and paternity orders.” Deborah H. Bell, Bell on Mississippi Family Law § 18.08 (2005). Under UIFSA, a state ordering child support retains jurisdiction so long as the obligor, obligee, or child remain in that state.
 
 See
 
 Miss.Code Ann. § 93-25-101(l)(a)(i).
 

 ¶ 20. We again note that Evans’s wife and children received child-support benefits pursuant to a Louisiana court order. Upon Evans’s move to Vicksburg, the order was registered in Mississippi. However, because Qiana and the children
 
 *470
 
 still resided in Louisiana, Louisiana retained continuing, exclusive jurisdiction.
 
 See
 
 Miss.Code Ann. § 93-25-101;
 
 see also Watkins v. Watkins,
 
 802 So.2d 145, 147 (¶¶ 5-6) (Miss.Ct.App.2001).
 

 ¶ 21. Due to difficulties in finding employment, Evans’s income decreased, and he sought a modification of his child support obligation by the Warren County Chancery Court. At this point, under UIFSA, the Mississippi court had no subject-matter jurisdiction over the child-support obligation and was without authority to address the requested modification.
 

 ii. Modification by Late Consent
 

 ¶ 22. Section 93-25-101 creates a procedure for the parties to consent to try the support modification issue in Mississippi. If knowing consent under this provision is given, the parties may proceed in this state. For a Mississippi tribunal to obtain jurisdiction to modify Evans’s support obligation, all parties must consent in the record to a transfer from the court originally issuing the support order — here, the Louisiana district court. Section 93-25-101 provides, in pertinent part, that:
 

 (1) ... upon petition, a tribunal of this state may modify a child support order issued in another state which is registered in this state, if, after notice and hearing, it finds that:
 

 [[Image here]]
 

 (b) This state is the state of residence of the child, or a party who is an individual is subject to the personal jurisdiction of the tribunal of this state, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for a tribunal of this state to modify the support order and assume continuing, exclusive jurisdiction.
 

 Miss.Code Ann. § 93-25-101(l)(b). Thus, if consent requirements are met, Mississippi acquires “continuing exclusive jurisdiction, and its orders must then be treated by other states as would those of the original state[.]”
 
 Nelson v. Halley,
 
 827 So.2d 42, 49 (¶ 25) (Miss.Ct.App.2002).
 

 ¶ 23. MDHS contends that although it originally joined Evans in seeking modification of the Louisiana order, the resulting Warren County Chancery Court’s agreed order, which reduced Evans’s support obligations to $400, is invalid. MDHS argues that on November 15, 2004 — the date on which the Mississippi court modified the Louisiana order — Qiana had not consented in the record from the Louisiana court. Thus, MDHS claims she did not properly consent to a Mississippi tribunal modifying the Louisiana support order.
 

 ¶ 24. The record indicates Qiana did not file a consent in the record from the Louisiana court when Evans sought modification in Mississippi. She instead simply filed an affidavit with the chancery court attesting that Evans was not in arrears on his support obligation. Indeed, her affidavit did not even represent that she agreed to a downward reduction in support. Nor did it authorize a Mississippi court to decide the issue. Thereafter, on June 15, 2005, Qiana filed an affidavit in Tangipa-hoa Parish, Louisiana, wherein she swore she “had not made any agreement to modify the [Louisiana court’s] child[-]support award, nor ha[d] she been contacted by anyone with any suggestion of reducing the child support award.” In this affidavit, she made clear “she is opposed to a reduction” of the Louisiana support obligation. However, nearly two years later, she contradicted her prior sworn statement. On May 24, 2007, she claimed by affidavit that she had previously verbally consented to the reduction by the Mississippi court and had she been asked to “sign something in writing, she would have done so.”
 

 
 *471
 
 ¶ 25. Evans contends this Court’s decision in
 
 Nelson,
 
 827 So.2d at 50 (¶ 28), supports his argument that Qiana’s late consent to Mississippi’s jurisdiction breathed life into the previously entered agreed order. We disagree.
 

 ¶ 26. In
 
 Nelson,
 
 the father, a non-Mississippi resident, sought to modify a California support order in Mississippi.
 
 Id.
 
 at 44 (¶ 4). The mother and children resided in Mississippi.
 
 Id.
 
 This Court analyzed UIFSA and held that consent to transfer jurisdiction is required where another state still holds continuing, exclusive jurisdiction. However, this Court found that all parties had consented at the outset of the Mississippi case and allowed the action, requiring a transfer request to be filed in the original jurisdiction.
 
 Id.
 
 at 50 (¶ 28). Judge Southwick, writing for this Court, noted:
 

 There is no evidence that a written consent was filed in the California court. The actual filing is a simple act. Parties may fully be aware of UIFSA’s requirements and believe that their signed consent had been filed, only to find out late in the proceedings that it was not.
 
 We have no difficulty in concluding that the reality of the consent needs to exist, but a late filing of it does not affect the chancery court’s jurisdiction.
 

 Id.
 
 (emphasis added).
 

 ¶ 27. Evans seizes on the latter part of the above paragraph as support that Qia-na’s later-filed, May 24, 2007, affidavit serves as consent to the Mississippi court’s handling and modification of the Louisiana support order. However, this Court in
 
 Nelson
 
 did not provide that late consent is a blanket curative measure for assuming jurisdiction. Rather, this Court was careful to point out that a later-filed consent would suffice, “unless an intervening order appears from some other state that did comply with UIFSA.”
 
 Id.
 

 ¶ 28. Here, we are not only confronted with Qiana’s conflicting affidavits; but we are also faced with an intervening order entered after the Mississippi agreed order was entered but before filing of the late consent. On June ⅝ 4, 2007, prior to any decision on the validity of the Mississippi agreed order and prior to the filing of Qiana’s late consent, the Louisiana court, which retained continuing, exclusive jurisdiction, ordered custody of the children to Evans. It also suspended his child-support obligation. Because of Qiana’s contradictory affidavits, and the intervening Louisiana order that complied with UIFSA and was entered prior to the late filing of consent, we find Evans’s argument misplaced.
 

 ¶ 29. Therefore, we find the Mississippi agreed order void ab initio, and we hold that the Louisiana order remained in effect.
 

 Hi Modification Pursuant to Other Statutes
 

 ¶ 30. Evans contends other statutes provide for modification of child support without a request to transfer or the filing of consent. Though Evans is correct, these statutes are inapplicable to the facts of this case. Initially, we note Evans’s argument is without merit to the extent he cites procedures prohibited by UIFSA.
 

 ¶ 31. Here, the support order is clearly governed by UIFSA. Therefore, aside from sections 93-25-101 (requiring either consent or that none of the parties reside in the issuing state) and Mississippi Code Annotated section 93-25-107 (Rev.2004) (requiring both parties to reside in Mississippi), the only other alternative for modification is found in Mississippi Code Annotated section 93-25-108 (Rev.2004). However, section 93-25-108 requires that Louisiana either lack jurisdiction or refuse to modify the support order. Obvi
 
 *472
 
 ously, Louisiana did not lack jurisdiction since Qiana and the children continued to reside in that state, and there is no indication that Evans ever sought or was refused a modification in Louisiana. Accordingly, we find this argument without merit.
 

 iv. Transfer from Louisiana to Mississippi Due to Filing for Enforcement
 

 ¶ 32. Finally, Evans argues that Louisiana lost its interest in the case after the child-support order was filed in the Chancery Court of Warren County for its enforcement in Mississippi. This is incorrect under UIFSA because Louisiana retains exclusive, continuing jurisdiction. Likewise, Mississippi Code Annotated section 43-19-59(3)(c) (Rev.2009) instructs: “If [MDHS] provides assistance to another state with respect to a case ... pursuant to this section, neither state shall consider the case to be transferred to the caseload of such other state.” Therefore, enforcement in Mississippi does not equate to a transfer of the entire case to Mississippi. This issue lacks merit.
 

 B. Duty to Modify Evans’s Obligation
 

 ¶ 33. Alternatively, Evans alleges MDHS had a duty to ensure that a Mississippi tribunal had proper jurisdiction to modify his support order. Specifically, he contends MDHS breached its duty of ordinary care by failing to ensure proper jurisdiction for obtaining the Mississippi agreed order and by failing to take proper action to have the controlling order determined. Though this assignment of error is wholly at odds with his allegation in his complaint that MDHS was “without just cause to seek to set aside the agreed order,” we note that section 43-19-31© places responsibility on the CSU for initiating actions under UIFSA. Furthermore, Mississippi Code Annotated section 93 — 25—39(3)(b) (Rev.2004) provides that:
 

 (3) A support enforcement agency of this state that is requesting registration of a child support order for enforcement or for modification in this state shall make reasonable efforts:
 

 [[Image here]]
 

 (b) To ensure that, if two (2) or more child support orders exist and the identity of the controlling order has not been determined, a request for such a determination is made in a tribunal with jurisdiction to do so.
 

 ¶ 34. Upon Louisiana’s contact with MDHS and inquiry into the Mississippi court’s reduction of Evans’s support obligation, MDHS attempted at least three times to set aside the agreed order. But the chancellor refused to do so absent service on Evans.
 

 ¶ 35. Evans suggests that because MDHS failed to obtain personal jurisdiction over him, we should find MDHS failed to act with ordinary care in carrying out a statutory duty to obtain a judicial determination of the controlling order. We note there is little in the record from either party as to why service was not obtained on Evans. Nevertheless, though we have gone through great detail explaining why the Louisiana order remained in effect, we need not decide whether MDHS made reasonable efforts, or failed to act with ordinary care, by complying with section 95-25-39, but neglecting to serve Evans. We need not decide this issue because we find, based on the record before us, MDHS
 
 did not
 
 enforce the Louisiana order after its modification by the Warren County Chancery Court.
 

 ¶ 36. However, the circuit court based its immunity-based grant of summary judgment on the erroneous assertion that MDHS enforced the valid Louisiana order for $800 per month. But the record shows
 
 *473
 
 MDHS enforced the $400 (Mississippi) withholding order from early 2005 until a Louisiana court terminated Evans’s support obligation in June 2007. Because it granted summary judgment based on MDHS’s immunity defense, the circuit court did not specifically address each of Evans’s asserted claims. Thus, we proceed de novo to review each claim to determine whether the circuit court reached the right result in granting summary judgment, but based on the wrong reason.
 
 See Puckett v. Stuckey,
 
 633 So.2d 978, 980 (Miss.1993) (citation omitted).
 

 II. Sanctions
 

 ¶ 37. Evans contends MDHS’s negligence resulted in the unwarranted suspension of his driver’s license, an encumbrance of his bank account, damage to his credit rating, and led to the interception of his income tax refund.
 

 ¶ 38. Evans does not challenge MDHS’s authority to levy these specific sanctions. Instead, he claims they were inappropriate under the circumstances because he was not in arrears on his support obligation. It is well settled that to survive summary judgment, the non-movant must provide significant probative evidence of a genuine issue of material fact, and may not rely on the pleadings.
 
 Dew v. Tchula Grain Co.,
 
 812 So.2d 1014, 1017 (¶ 7) (Miss.Ct.App.2001). To penetrate MDHS’s immunity under the MTCA, Evans must show MDHS failed to exercise “ordinary care” in performance of, or in the failure to execute or perform, its statutory duties. Miss.Code Ann. § ll-46-9(l)(b). Ordinary care means “that the immunity to a negligence suit provided under section 11-46-9(b) [applies] only when there is no negligence, i.e., when ‘ordinary care’ is exercised.”
 
 Lippincott v. Miss. Bureau of Narcotics,
 
 856 So.2d 465, 468 (¶ 12) (Miss.Ct.App.2003).
 

 ¶ 39. MDHS’s immunity aside, we note Evans failed to provide sufficient evidence that he was not behind in his child-support obligation at the times MDHS imposed the various sanctions against him. Indeed, the many records he relies on, including unrecorded payments to Qiana for which he seeks credit, show he was consistently in arrears under the (Mississippi) $400 agreed order. In viewing the evidence in the light most favorable to Evans, we find his attorney’s accounting, which appears to be more generous than the record suggests is proper, indicates Evans was in arrears for the vast majority of the time MDHS enforced his support obligation.
 

 A. License Suspension
 

 ¶ 40. Considering the issues surrounding Evans’s driver’s license suspension, Mississippi Code Annotated section 93-11-157 (Supp.2009) authorizes MDHS to suspend an obligor’s license for non-compliance with child-support orders. Before suspension is permitted, section 93-11-157(1) requires notice to the licensee by first-class mail. The notice must inform the licensee that ninety days from receipt of the notice, MDHS will request immediate suspension of the license unless the arrearage is paid or an agreement to satisfy the arrearage is reached.
 
 Id.
 
 Upon receiving notice, the licensee may request a review with MDHS, under section 93-ll-157(2)(a), or may seek to participate in negotiations with MDHS to establish a payment schedule for arrearage, under section 93-ll-157(2)(b). The notice to the licensee must clearly state the remedies and procedures available. Miss.Code Ann. § 93-11-157(6). If the licensee and MDHS do not reach an agreement, the licensee may request that a court establish a payment schedule. Miss.Code Ann. § 93-11-157(5). Within thirty days of license suspension, the licensee may appeal
 
 *474
 
 the suspension to the chancery court. Miss.Code Ann. § 93-11-157(8).
 

 ¶ 41. Evans wholly fails to mention or address these requirements. Instead, he relies on unsupported allegations that his license was wrongfully suspended. The record contains a letter from his attorney indicating his license was suspended in December 2006. At this time, Evans’s own accounting shows he was $2,420.81 behind in child-support payments — under the lesser $400 order. Absent is any allegation that MDHS failed to provide him with the statutorily required notice before suspension. Nor does he show MDHS neglected to inform him of the available remedies and procedures. There is also no indication he appealed the license suspension to chancery court.
 

 ¶ 42. Evans has the burden of presenting evidence showing a triable issue of fact exists.
 
 Borne v. Dunlop Tire Corp. Inc.,
 
 12 So.3d 565, 570 (¶ 16) (Miss.Ct.App.2009) (citation omitted). Because Evans neglected to establish a fact issue as to MDHS’s failure to exercise ordinary care in suspending his license, we find summary judgment proper here.
 

 B. Bank Account
 

 ¶ 43. Evans also alleges MDHS injured his credit history and improperly froze assets from his bank account. Mississippi statutory law provides that whenever court-ordered child-support payments have become due and “remain unpaid for a period of at least thirty (30) days, a judgment by operation of law shall arise against the obligor in an amount equal to all payments that are then due and owing.” Miss.Code Ann. § 93-11-71(1) (Supp.2009). “Assets held in financial institutions” are subject to “interception or seizure without regard to the entry of the judgment on the judgment roll of the situs district or jurisdiction!)]” Miss.Code Ann. § 93-11-71 (3)(c). Furthermore, Mississippi Code Annotated section 93-11-69 (Rev.2004) provides for reporting to consumer reporting agencies the amount of overdue child support owed by an absent parent.
 

 ¶ 44. Here again, Evans fails to support his allegations, as his own records show arrears supporting the lawful reporting, encumbrance, and seizure. Therefore, MDHS is not liable for any resulting credit injury. This issue is without merit.
 

 C. Income Tax Return
 

 If 45. Evans claims MDHS negligently accounted and disbursed his support payments causing LDSS to consider him behind in his obligation. Because Louisiana was assigned the rights to Evans’s support payments, it retained authority to seek repayment for those services. La. Civ. Code Ann. Art. 46:236.1.5. We note LDSS did refund a portion of the funds it initially withheld from Evans’s tax return. But Evans failed to show LDSS intercepted his income tax refund because of any action or inaction on the part of MDHS.
 

 ¶ 46. The “[m]ere allegation or denial of material fact is insufficient to generate a triable issue of fact and avoid an adverse rendering of summary judgment. More specifically, the plaintiff may not rely solely upon the unsworn allegations in the pleadings, or arguments and assertions in briefs or legal memoranda.”
 
 Palmer v. Biloxi Reg’l Med. Ctr., Inc.,
 
 564 So.2d 1346, 1356 (Miss.1990) (internal citations and quotations omitted).
 

 ¶ 47. Taking the evidence in the light most favorable to Evans, even under the $400 Mississippi support order, he was behind in his child-support payments for the vast majority of MDHS’s handling of this case. As a final note, Mississippi Code Annotated section 43-19-58 (Rev. 2009), provides the following procedure for those wishing to contest the imposition of administrative civil penalties:
 

 
 *475
 
 (1) Persons wishing to contest the imposition of an administrative civil penalty under the provisions of Laws, 1997, chapter 588, shall be entitled to a hearing before the Director of the Department of Human Services or his designee by so requesting within twenty (20) days after receiving notice of the imposition of the administratively imposed civil penalty. The request shall identify the civil penalty contested and legibly state the contestant’s name, mailing address and home and daytime phone numbers. The date, time and place for the hearing shall be made as convenient as possible for the contestant, who shall receive notice thereof not less than seven (7) days before the hearing. A hearing on whether to impose a civil penalty and to consider circumstances in mitigation shall be held on the time and the place specified in the notice. The contestant may appear in person, through his attorney or, prior to the date set for the hearing, submit written testimony and other evidence, subject to the penalty for false swearing, for entry in the hearing record.
 

 (2) After the hearing, the director or his designee shall issue his order, which may be appealed to the chancery court of the county in which the contestant resides in the same manner as is provided by law for appeals originating from county courts.
 

 (3) The director or his designee may file the order assessing the penalty, or a certified copy of the order, with the clerk of any chancery court in the state after expiration of the time in which an appeal may be taken, or final determination of the matter on appeal, whereupon the order assessing the penalty shall be enrolled on the judgment roll and may be enforced in the same manner as a judgment.
 

 ¶ 48. Evans has not shown that he initiated challenges to any of the administrative sanctions imposed by MDHS, or that he was denied the ability to contest or appeal MDHS’s actions. In addition, the MTCA requires a plaintiff to exhaust all administrative remedies before filing suit.
 
 See
 
 Miss.Code Ann. § 11-46-11(1) (Rev. 2002) (abrogated in part by
 
 Univ. of Miss. Med. Ctr. v. Robinson,
 
 876 So.2d 337, 341 (¶ 19) (Miss.2004)). From the record before us, it appears Evans also failed to comply with this mandate. Accordingly, we find summary judgment proper on each of the sanction-based allegations.
 

 III. Emotional Distress
 

 A. Intentional
 

 ¶ 49. Evans sought additional damages for emotional distress he argues MDHS caused both intentionally and through its negligence. Evans claims he experienced sleeplessness and anxiety. He also contends he experienced marital trouble and embarrassment at work due to his financial situation and his repeated requests for paperwork needed by MDHS. Evans alleges his distressed condition resulted from MDHS’s finding him in arrears on his support obligation, mishandling his support case, and pursuing sanctions against him.
 

 ¶ 50. In cases involving intentional infliction of emotional distress, the plaintiff must prove the defendant’s conduct “was wanton and willful and evoked outrage or revulsion.”
 
 Riley v. F.A. Richard & Assocs., Inc.,
 
 16 So.3d 708, 719 (¶ 33) (Miss.Ct.App.2009) (citations omitted). We have already determined the complained of sanctions were authorized based on his constant arrearage. His other claims aside, we find he has failed to show MDHS’s actions were “so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of deeen-
 
 *476
 
 cy, and to be regarded as atrocious, and utterly intolerable in a civilized community.”
 
 Id.
 
 (quoting
 
 Speed v. Scott,
 
 787 So.2d 626, 630 (¶ 18) (Miss.2001)). Accordingly, this issue lacks merit. We next turn to Evans’s claim for negligent infliction of emotional distress.
 

 B. Negligent
 

 ¶ 51. In 1999, the supreme court adopted a permissive view of the negligence-based claim, allowing plaintiffs to “recover for emotional injury proximately resulting from negligent conduct,” without any physical manifestation of harm “provided only that the injury was reasonably foreseeable by the defendant.”
 
 Adams v. U.S. Homecrafters, Inc.,
 
 744 So.2d 736, 743 (¶ 20) (Miss.1999) (quoting
 
 Strickland v. Rossini,
 
 589 So.2d 1268, 1275 (Miss.1991)). In 2001, the supreme court changed course, holding that “some sort of physical manifestation of injury or demonstrable physical harm” was required.
 
 Am. Bankers’ Ins. Co. of Fla. v. Wells,
 
 819 So.2d 1196, 1209 (¶ 43) (Miss.2001). Despite its contrary pronouncement, the supreme court in
 
 American Bankers’
 
 noted the conflicting views and explained that it had “applied the line of cases adopting the more restrictive majority view in the most recent holdings on this issue, although the cases applying the minority view [had] not been overruled.”
 
 Id.
 
 More recently, in
 
 Wilson v. General Motors Acceptance Corp.,
 
 883 So.2d 56, 65 (¶ 28) (Miss.2004), the supreme court emphasized that “[e]ven in this more permissive line of cases [the court has] required a heavy burden of proof in order to establish a right to recover emotional distress damages.”
 

 ¶ 52. Here, even under the permissive standard, we find Evans’s claim fails because a plaintiff must still “prove some sort of injury, whether it be physical or mental.”
 
 Ill. Cent. R.R. Co. v. Hawkins,
 
 830 So.2d 1162, 1174 (¶ 26) (Miss.2002);
 
 see also Adams,
 
 744 So.2d at 743 (¶ 21) (“language ... adopting the term ‘demonstrable harm’ in place of ‘physical injury,’ indicates that the proof may solely consist of evidence of a mental injury without physical manifestation”).
 

 ¶ 53. A plaintiff must offer “substantial proof’ of emotional harm,
 
 Hawkins,
 
 830 So.2d at 1174 (¶ 26), and the emotional injuries must be reasonably foreseeable from the defendant’s actions.
 
 Adams,
 
 744 So.2d at 742-43 (¶ 19). Evans presents no medical or psychological treatment. The evidence he points to centers on his alleged sleeplessness and general worries about his children and his family. Our supreme court has held that sleeplessness, nightmares and even multiple visits to a medical doctor were insufficient proof of emotional harm.
 
 Hawkins,
 
 830 So.2d at 1175 (¶ 27). Particularly, the court reemphasized in
 
 Wilson
 
 that being “ ‘very depressed ... [and] very upset ... and emotional ... [and] not able to sleep,’ [were] insufficient to sustain an award of damages for mental anguish.”
 
 Wilson,
 
 883 So.2d at 65 (¶ 31) (quoting
 
 Strickland,
 
 589 So.2d at 1275-76).
 

 ¶ 54. Even absent the immunity provided by the MTCA, and MDHS’s actions notwithstanding, we find Evans’s allegations fall short of the “substantial proof’ of emotional harm Mississippi law requires to establish claims of emotional distress, including those analyzed under the permissive view. Thus, we find his negligence-based claim of emotional distress also fails.
 

 IV. Defamation
 

 ¶ 55. Evans alleges MDHS defamed his reputation through the negligent reporting of arrears. Certain intentional torts, such as defamation, are excluded from the MTCA’s waiver of immunity. Miss.Code Ann. § 11-46-5(2).
 
 *477
 
 Because this claim is outside the scope of immunity provided by the MTCA, we must determine whether Evans presents a fact issue on his defamation claim. To establish a claim of defamation, Evans must show:
 

 (a) a false statement that has the capacity to injure the plaintiffs reputation; (b) an unprivileged publication, i.e., communication to a third party; (c) negligence or greater fault on part of publisher; and (d) “either actionability of statement irrespective of special harm or existence of special harm caused by publication[.]”
 

 Mayweather v. Isle of Capri Casino, Inc.,
 
 996 So.2d 136, 139 (¶ 8) (Miss.Ct.App.2008) (quoting
 
 Speed,
 
 787 So.2d at 631 (¶ 21)).
 

 ¶ 56. Evans’s own accounting indicates he was consistently in arrears during MDHS’s handling of the child-support obligation. Thus, we find he is unable to show the necessary false statement required to substantiate his defamation claim.
 

 V. Conversion
 

 ¶ 57. Evans next contends MDHS negligently or intentionally converted child-support funds collected from him, withheld those funds, and failed to distribute them to LDSS or Qiana and his children as required by statute. He seeks release of all converted funds as well as accrued interest “prior to initiation and/or resolution of this action or in a percentage to be determined by the Court.”
 

 ¶ 58. “Conversion ... is an intentional tort that does not require proof of fraud, malice, libel, slander, or defamation.”
 
 Zumwalt v. Jones County Bd. of Sup’rs.,
 
 19 So.3d 672, 689 (¶ 86) (Miss.2009) (citation omitted). Thus, conversion is “arguably subject to the MTCA.”
 
 Id.
 
 Though at times he asserts a “fraudulent conversion” by MDHS, he fails to show any fraudulent intent on MDHS’s part. Thus, we proceed with deciding whether he has established a fact issue on his general claim of conversion.
 

 ¶ 59. To succeed on a conversion claim, Evans must show he owned the funds at issue. The supreme court instructs that “[i]t is elementary that ownership is an essential element of conversion.”
 
 Cmty. Bank of Ellisville, Miss. v. Courtney,
 
 884 So.2d 767, 772-73 (¶ 10) (Miss.2004). To establish a conversion, “there must be proof of a wrongful possession, or the exercise of a dominion in exclusion or defiance of the owner’s right, or of an unauthorized and injurious use, or of a wrongful detention after demand.”
 
 Id.
 
 (quoting
 
 Smith v. Franklin Custodian Funds, Inc.,
 
 726 So.2d 144, 149 (¶ 20) (Miss.1998)). Indeed, “there is no conversion until the title of the lawful owner is made known and resisted.... ”
 
 Id.
 
 (citing
 
 Miss. Motor Fin., Inc. v. Thomas,
 
 246 Miss. 14, 20, 149 So.2d 20, 23 (1963)).
 

 ¶ 60. It is undisputed that Evans was under court order to pay child support to Qiana, and “[o]nce a child support payment becomes due, that payment vests in the child.”
 
 Burt v. Burt,
 
 841 So.2d 108, 112 (¶ 12) (Miss.2001);
 
 Tanner v. Roland,
 
 598 So.2d 783, 786 (Miss.1992). For purposes of his conversion claim, we find Evans had no ownership interest in the vested support obligations regardless of whether the Louisiana or Mississippi order controlled. Absent Qiana or the children as party plaintiffs, there can be no conversion here.
 

 VI. Accounting and General Negligence
 

 ¶ 61. Though Evans fails to establish a conversion, we find that regardless of which order controlled, he presents a fact issue on his claim of negligent accounting and disbursement.
 

 
 *478
 
 f 62. MDHS has statutory authority to secure and collect child support for individuals receiving certain listed benefits. MDHS is also required by statute:
 

 To maintain a Central Receipting and Disbursement Unit to which all payments required by withholding orders and orders for support in all actions to which the Department of Human Services is a party shall be forwarded, and from which child support payments ordered by the court in actions to which the Department of Human Services is a party shall be disbursed to the custodial parent or other such party as may be designated by the court order.
 

 Miss.Code Ann. § 43-19-31(k).
 

 ¶ 63. Support-enforcement agencies such as MDHS, “shall disburse promptly any amounts received pursuant to a support order, as directed by the order.” Miss.Code Ann. § 93-25-63(1) (Rev.2004);
 
 see also
 
 Miss.Code Ann. § 43-19-39(1) (Rev.2009) (instructing MDHS to distribute payments as directed by the federal Social Security Act). MDHS, or a tribunal of this state, “shall furnish to a requesting party ... a certified statement ... of the amounts and date of all payments received.” Miss.Code Ann. § 93-25-63(1). Thus, MDHS had a statutory duty to disburse Evans’s child-support payments under section 93-25-63.
 

 ¶ 64. MDHS may retain collected funds as reimbursement for a mistaken or erroneous advance of benefits on behalf of a child. Miss.Code Ann. § 43-19-39(2). However, MDHS is not allowed to retain any amounts beyond that reimbursement.
 
 Brown v. Miss. Dep’t of Human Servs.,
 
 806 So.2d 1004, 1008 (¶¶ 14-15) (Miss.2000) (citing 42 U.S.C.A. § 657 (Supp.1999)). Our supreme court has noted:
 

 [M]DHS is not nor should it be a “for profit” enterprise. Indeed the federal law governing the funds which it distributes does not allow it to be. [M]DHS should make sure that every cent above public assistance obtained for support is used where it is needed most, the care of the children). The amount that the [M]DHS may retain is only that amount “permitted under federal and state statutes as reimbursement for public assistance monies previously paid to the recipient or children.” Brown is entitled to an accounting and recovery of the excess.
 

 Id.
 
 at (¶ 18).
 

 ¶ 65. The amounts collected and disbursed by MDHS are in dispute. MDHS’s accounting shows very few payments from Evans. In fact, from October 2004 to May 2006, MDHS’s records indicate only $1,654.77 in payments by Evans. Furthermore, a letter from LDSS to Evans’s attorney indicates, in April 2007, the State of Louisiana had received only $3,462.49 from MDHS. In total, MDHS’s records indicate payments by Evans in the amount of $4,735.67 as of June 2007.
 

 ¶ 66. Evans’s employer’s payroll summary, however, indicates child-support deductions of $3,538.91 between November 2004 and October 2005, and $738.48 withheld between October 2006 and January 2007. Therefore, Evans’s records show withholdings of $4,277.39 as of January 2007. Stated differently, by January 2007, Evans’s payroll records indicate withhold-ings totaling $458.28 less than what MDHS claims to have collected by June of that year.
 

 1167. Evans provided other records indicating payments exceeding the amounts MDHS credited him. The first record is a $500 payment sent directly to MDHS. Adding this amount to Evans’s wage with-holdings, he appears to have paid MDHS approximately $41.72 more than MDHS accounted. Furthermore, Evans’s records
 
 *479
 
 indicate two checks, recorded on Evans’s employer’s letterhead, totaling $2,383.85. However, it is unclear if these checks are simply payments of the withheld amounts or some type of additional payment. The record also includes checks written directly to Qiana totaling $2,100, but it is unclear if Evans informed MDHS of these direct payments. Finally, an accounting from Evans’s attorney shows he had paid over $9,000 to MDHS by March 2007, though he admittedly was still behind in his payments even under the $400 agreed order. When considered with Qiana’s affidavit, wherein she attests she received no support disbursements, we find Evans has provided sufficient evidence to raise a genuine issue of material fact — -whether MDHS breached its duty of ordinary care in accounting and disbursing Evans’s support obligations.
 

 ¶ 68. In reviewing grants of summary judgment, we view the evidence in the light most favorable to the nonmoving party.
 
 Weathers v. Metro. Life Ins. Co.,
 
 14 So.3d 688, 691 (¶ 12) (Miss.2009) (citing
 
 Univ. of Miss. Med. Ctr. v. Easterling,
 
 928 So.2d 815, 817 (¶ 8) (Miss.2006)). And “where there is doubt whether a fact issue exists, the non-moving party is the beneficiary of that doubt.”
 
 Id.
 
 (quoting
 
 Allen v. Mac Tools, Inc.,
 
 671 So.2d 636, 640 (Miss.1996)). Finding fact issues exist as to MDHS’s negligent accounting and disbursing of Evans’s support obligations, we reverse and remand this issue for further proceedings in the circuit court.
 
 [1]
 

 CONCLUSION
 

 ¶ 69. Evans failed to provide sufficient evidence to show any sanctions were improper or caused by any negligence on the part of MDHS. Nor has he established valid claims for intentional or negligent infliction of emotional distress, conversion, or defamation. Accordingly, we reverse and remand the issue of MDHS’s negligent accounting and disbursement of Evans’s support payments, and affirm summary judgment on the remaining claims.
 

 ¶ 70. THE JUDGMENT OF THE CIRCUIT COURT OF WARREN COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED ONE-HALF TO THE APPELLANT AND ONE-HALF TO THE AP-PELLEE.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE AND ROBERTS, JJ., CONCUR. CARLTON, J., NOT PARTICIPATING.
 

 [1]
 

 .
 
 See City of Ridgeland v. Fowler,
 
 846 So.2d 210 (Miss.2003) (finding circuit court had jurisdiction to entertain accounting claim asserted under the MTCA.)