**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 8, 2013

No. 12-60306
Summary Calendar

Lyle W. Cayce
Clerk

THE ESTATE OF MARTIN LUTHER KING, JR., INCORPORATED, a
Georgia Corporation,

Plaintiff - Appellant

v.

HOWARD NELSON BALLOU,

Defendant - Appellee

Appeal from the United States District Court for
the Southern District of Mississippi
U.S.D.C. No. 3:11-CV-591

Before JONES, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The Estate of Martin Luther King, Jr., Incorporated ("the Estate") appeals the district court's grant of Howard Ballou's ("Howard") motion for summary judgment. Because the statute of limitations renders the Estate's claims untimely, we AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60306

# I. FACTUAL HISTORY

During her employment as personal secretary to the late Dr. Martin Luther King, Jr., Maude Ballou ("Ms. Ballou") came into possession of certain documents now sought by the Estate through claims of replevin and conversion. Over the course of five years, Ms. Ballou worked for Dr. King at the Montgomery Improvement Association ("MIA") and the Southern Christian Leadership Conference ("SCLC"). Upon leaving Dr. King's employ in the summer of 1960, Ms. Ballou moved from Georgia to Alabama. After relocating, she retained possession of the documents at issue, which relate to Dr. King's work at MIA and SCLC.

Ms. Ballou and her husband began working at the Elizabeth City State University ("ECSU"). In his role as an archivist at ECSU, Ms. Ballou's husband stored the documents at issue in the basement of ECSU's library. Following his death, an archivist at ECSU discovered the documents and, believing they belonged to Ms. Ballou's husband, returned them to Howard—the son of Ms. Ballou and her husband. After learning of the documents from a newspaper article published in February 2010, the Estate contacted Howard asserting ownership of the documents and requesting their return. Howard made no response, and the Estate sued.

Howard moved for summary judgment, contending that the Estate's claims were barred by the statute of limitations and, in the alternative, that Dr. King gave the documents to Ms. Ballou as a gift, thereby divesting the Estate of any ownership interest in the documents. In support of his statute-of-limitations defense, Howard argued that the Estate's claims accrued when: (1) the documents were created by Dr. King; (2) the Estate was incorporated; or (3) the documents were discovered at ECSU by the archivist. The Estate responded that its claims accrued only after Howard refused to return the documents following the Estate's demand. The district court rejected both parties'

No. 12-60306

arguments and found that the limitations period commenced when Ms. Ballou retained possession of the documents after leaving Dr. King's employ in the summer of 1960. Because the limitations period had run, the district court granted the motion for summary judgment. In the alternative, the district court also granted the motion based on the Estate's inability to establish its ownership of the documents in light of evidence that Dr. King gave the documents to Ms. Ballou as an *inter vivos* gift. The Estate timely appealed.

## II. STANDARD OF REVIEW

We review a grant of summary judgment de novo, applying the same standard as the district court. *Gen. Universal Sys., Inc. v. HAL, Inc.*, 500 F.3d 444, 448 (5th Cir. 2007). Summary judgment is appropriate if the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The evidence must be viewed in the light most favorable to the non-moving party. *United Fire & Cas. Co. v. Hixson Bros., Inc.*, 453 F.3d 283, 285 (5th Cir. 2006). Generally, a party asserting an affirmative defense carries the burden of proof to establish that it applies. *See Crescent Towing & Salvage Co. v. M/V ANAX*, 40 F.3d 741, 744 (5th Cir.1994).

## III. DISCUSSION

The district court appropriately determined that the Estate's claims are time-barred by Mississippi's statute of limitations.[1] Depending on when the

---

[1] Contrary to the Estate's arguments, the district court did not rule on Howard's statute-of-limitations defense *sua sponte*. The authority cited by the Estate to advance this claim is inapposite. *See Lebouef v. Island Operating Co.*, 342 F. App'x. 983 (5th Cir. 2009) (unpublished). In *Lebouef*, we focused on whether the district court could consider a statute-of-limitations defense *sua sponte* when the defendant failed to raise it in the answer. *Id.* at 984. Here, Howard raised the defense both in the answer and in his motion for summary judgment. Further, the Estate had "notice and a reasonable time to respond"—and did in fact respond—to Howard's statute-of-limitations defense. Although both parties advanced "faulty" limitations arguments, the district court ruled appropriately by correctly applying the limitations statute to determine when the Estate's claims accrued.

No. 12-60306

Estate's conversion and replevin claims arose, Mississippi's residual statute of limitations requires the commencement of these actions within three or six years after they accrue. *See* MISS. CODE. ANN. § 15-1-49(1) (requiring that actions arising after July 1989 "shall be commenced within three (3) years next after the cause of such action accrued, and not after"); *First Bank v. E. Livestock Co.*, 886 F. Supp. 1328, 1330 (S.D. Miss. 1995) (explaining that § 15-1-49(1) was amended in 1989 to reduce the statute of limitations from six to three years).

A conversion occurs when an individual exercises "dominion in exclusion or defiance of the owner's right, or [engages in] an unauthorized and injurious use . . . [or] a wrongful detention after demand" of property. *Smith v. Franklin Custodian Funds, Inc.*, 726 So. 2d 144, 149 (Miss. 1998); *see also Cycles, Ltd. v. W.J. Digby, Inc.*, 889 F.2d 612, 619 (5th Cir. 1989) (noting the presence of a conversion when an individual "exercises an unauthorized act of dominion or ownership over the personal property of another." (citing *Masonite Corp. v. Williamson*, 404 So.2d 565, 567 (Miss. 1981)). The Mississippi Supreme Court has long held that "when goods are tortiously taken, the statute of limitations begins to run from the taking, for the tortious act is of itself a conversion." *Johnson v. White*, 21 Miss. (1 S. & M.) 584, 588 (1850).

Faced with this longstanding precedent, the Estate essentially urges that Howard must establish that a conversion occurred in the summer of 1960 to support his affirmative defense. Indeed, as the moving party relying on a statute-of-limitations defense, Howard carries the burden of demonstrating the date on which the Estate's claims accrued. *See Jenkins v. Pensacola Health Trust, Inc.*, 933 So. 2d 923, 927 (Miss. 2006), *modified*, *Saul ex rel. Heirs of Cook v. S. Cent. Reg'l Med. Ctr., Inc.*, 25 So. 3d 1037 (Miss. 2010). However, it remains, "of course, for [the plaintiff] to demonstrate that the acts [giving rise to the claims] occurred at all." *Id.* Consequently, Howard must establish only that the limitations period of any alleged conversion or replevin claims began in

4

the summer of 1960—he need not establish that such conduct actually occurred.

In light of the Estate's complaint, Howard did not have to present additional proof to make this showing. The Estate alleged in its complaint that Ms. Ballou "left Atlanta in the summer of 1960 to rejoin her family, [taking] many of Dr. King's documents, photographs and other items with her" despite having "no personal right or ownership of these documents." Based on the Estate's own account, Ms. Ballou acted contrary to Dr. King's ownership interest when she retained control of the documents after her employment. Accordingly, the alleged conversion and replevin claims accrued during the summer of 1960, and the Estate now asserts these claims far outside of the statute of limitations.[2]

The Estate relies on only one authority, *Evans v. Mississippi Department of Human Services*, to argue against the longstanding principle that a conversion occurs at the time that an individual acts in contravention of the owner's interest in property. *See* 36 So. 3d 463, 477 (Miss. Ct. App. 2010). The Estate, however, incorrectly reads *Evans* to imply that the statute of limitations does not begin to run until "the title of the lawful owner is made known and resisted." *See id.* at 36 So. 3d at 477 (quoting *Cmty. Bank v. Courtney*, 884 So. 2d 767, 773 (Miss. 2004). Read in context, this statement provides that "'there is no conversion until the title of the lawful owner is made known and resisted *or [an individual] exercises dominion over the property by use, sale, or otherwise*.'" *Cmty. Bank*, 884

---

[2] The Estate does not argue that its claims fall within Mississippi's discovery rule, which provides that "[i]n actions for which no other period of limitation is prescribed and which involve latent injury or disease, the cause of action does not accrue until the plaintiff has discovered, or by reasonable diligence should have discovered, the injury." MISS. CODE. ANN. § 15-1-49(2). Indeed, in its briefing to the district court, the Estate acknowledged that "the statute of limitations for conversion and replevin is not a 'discovery' statute." Rather, Mississippi case law provides that these claims accrue when an individual acts contrary to the owner's interest, so long as the individual did not engage in fraud to conceal the conversion. *See, e.g.*, *Smith*, 726 So. 2d at 148 (holding "that the discovery rule is inapplicable in actions involving conversion of negotiable instruments unless the defendant asserting the statute of limitations is involved in the fraudulent concealment").

No. 12-60306

So. 2d at 773 (quoting *Miss. Motor Fin., Inc. v. Thomas*, 149 So. 2d 20, 20 (1963)) (emphasis added). As applied here, the latter part of this statement reveals that the limitations period began to run in the summer of 1960. Indeed, *Evans* did not discuss the statute of limitations, but merely focused on the importance of establishing the claimant's ownership when asserting a conversion claim. *See* 36 So. 3d at 477. Consequently, the court in *Evans* did not modify the settled principle that a conversion claim accrues when the alleged tortious taking occurs.

Finally, the Estate points out that a conversion claim "cannot be maintained without proof that the defendant either did some positive wrongful act with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed the property." *Greenline Equip. Co. v. Covington Cnty. Bank*, 873 So. 2d 950, 955 (Miss. 2002) (citation and quotation marks omitted). According to the Estate's complaint, Ms. Ballou "did not have any personal right or ownership of th[e] documents" because she was merely "entrusted with property belonging to Dr. King." Consequently, Ms. Ballou's retention of these documents after leaving Dr. King's employment demonstrates that she committed a positive wrongful act with the "intent to exercise dominion or control over goods which is inconsistent with the true owner's right." *First Investors Corp. v. Rayner*, 738 So. 2d 228, 234 (Miss. 1999).

## IV. CONCLUSION

Accordingly, Howard met his burden of establishing that the limitations period began to run in 1960 when Ms. Ballou allegedly acted contrary to Dr. King's ownership rights in the documents. We therefore AFFIRM the district court's grant of summary judgment based on the statute of limitations.[3]

---

[3] Because the statute-of-limitations defense disposes of the Estate's claims, we offer no opinion concerning the district court's alternative ground for granting the motion for summary judgment based on the Estate's inability to establish ownership of the documents.